PATRICK PEYTON, plaintiff in error, vs. HENRY J. LAMAR et al., defendants in error.

A mere general creditor who has not reduced his claim to a judgment, and who has no lien upon the property of his debtor, has no right to come into equity to enjoin a mortgage given by the debtor to another creditor, on the ground that the mortgage is upon property to which the debtor did not acquire title until after the date of the mortgage.

Mortgages. Injunctions. Before Judge COLE. Bibb county. Chambers. March, 1871.

Peyton's bill made this case: In May, 1870, he loaned Neville $300 00, and took his note therefor, and borrowed for Neville other $700 00, and stood his security therefor. Neville was then publishing and conducting "The Macon Daily Journal," with Harrison and Ricks as his partners. Neville was trying to buy them out, and Peyton let him have

said $300 00, and procured for him said $700 00 for that pur-
pose, at the instance of one Doyle, who Peyton supposed was
going to join Neville in that purchase. But Doyle had no such
purpose, and Neville alone made the purchase, and paid said
money to his partners. At the time, Peyton knew of no lien
on the presses, etc., of said newspaper office, but he learns
that said partners took from Neville a mortgage on the same,
to secure the balance of the purchase-money; and on the 9th
of February, 1870, Neville and his said partners had given
Henry J. Lamar a mortgage on the same, to secure their note
to him of that date, for $2,500 00, and due twelve months
thereafter. When Lamar's mortgage was made, (as Neville
says,) his firm did not own or have possession of the press
and materials afterwards used in the publication of said news-
paper, and which Lamar claims to be covered by his mort-
gage. Nor did they then have any right to the possession
of the same, they then not having purchased said property.
Therefore, Lamar's mortgage is not a valid lien on the same.
Yet he has foreclosed it, had it levied upon the same, and the
sheriff is about to sell it to satisfy said mortgage. The pro-
ceeds will not pay Lamar and said $300 00, and said $700 00,
and Neville is otherwise insolvent. Wherefore, he prayed
injunction against said sale.

To this bill was attached an affidavit by Neville, that his
said saying was true. The Court ordered Lamar to shew
cause why the injunction should not issue. He answered
that his said mortgage was duly recorded in April, 1870,
and, therefore, Neville had notice of it. His debt was created
under the following circumstances : Harrison owned or con-
trolled the two presses connected with the office, and the
stones belonging thereto, and Neville and Ricks proposed to
take them and purchase all other material to fit up an office
for a daily and weekly paper and job work. They applied
to Lamar, stated their project, told him what they had on
hand, and asked a loan of $2,500 00 to buy the material for
said purpose, and offered to mortgage said presses and stones

and what should be purchased. Lamar assented. They had agreed upon the name of their paper, took the money and gave their firm note and mortgage as aforesaid, and with the $2,500 00 bought material as aforesaid. And those presses and stones and this material he now is trying to have sold. Harrison's brother owned the presses and stones, but Harrison had control of them, they being in Macon, subject to his order. The subsequent mortgage to Harrison and Ricks was expressly made subordinate to Lamar's. And Harrison and Ricks swore to the same. The Chancellor refused the injunction, and that is assigned as error.

LANIER & ANDERSON, for plaintiff in error.

LYON, DeGRAFFENRIED & IRVIN, for defendants.

McCAY, J.

We do not care to go into the question of the validity of this mortgage. Our Code in declaring what things may be mortgaged does not declare that other things may *not* be : Code, section 1944. Nor are we sure that, under the facts of this case, this mortgage is not within, at least, the equity of the last clause of the section we have referred to. Besides, the recognition of this mortgage by the parties *after* the property had fully come into their possession, would make it valid, even if there be doubts about its original validity. There might, perhaps, questions arise between Lamar and subsequent purchasers of this property, or between him and the sellers of it, claiming a right of stoppage in *transitu.* The former class might claim that they were not bound to look on the record for mortgages dated before the title of the mortgagors accrued, and the latter would have a very high equity against the mortgagee. But the present complainant has no *interest at all* in this property. He is a simple creditor; he has not even a judgment lien. If Lamar were enjoined what good would it do him? The owner of the

Peyton *vs.* Lamar *et al.*

property could next day sell it and pay Lamar, or give him another mortgage, or sell it and put the money in his pocket, and the whole machinery of an injunction and a bill in equity would end in smoke.

We have decided at this term, in the case of *Cubbedge & Hazlehurst vs. Adams*, that, as a· general rule, a simple creditor, who has no lien on the property, cannot enjoin his debtor from selling it, nor come into equity to ask its interference to preserve it until he can get a judgment.

There are some peculiar cases where equity will interfere, but they stand upon their own facts.

The case of *Cohen vs. Meyers*, at this term, was one of these. In that case it was charged, that the debtor had *fraudulently procured* the property from the plaintiffs, with intent not to pay for it, and that the vendee or nominal possessor knew of this. And it will be found, that all the cases, where this rule has been broken into, have turned upon peculiar circumstances, and the complainant had, in fact, an equitable interest in the very property he was pursuing.

The general rule is fully discussed in 2d Johnson Chancery, 144. The case in 36 Georgia, 534, ·was of a married woman who contracted for the goods in Tennessee, as a free trader, under their law. She could not be sued here at law, and the goods had been purchased from the complainant. The facts showed so gross a case as justified the inference that the *purchase* was fraudulent.

We do not intend to lay down any positive limit to the right of injunction in such cases, but, to give the Court jurisdiction, there must be some other equity than the mere existence of a claim and a probability that the defendant will not apply his effects towards the settlement of it.

Judgment affirmed.