<table>
<tr><td>53</td><td>527</td></tr>
<tr><td>77</td><td>45</td></tr>
<tr><td>53</td><td>527</td></tr>
<tr><td>78</td><td>148</td></tr>
<tr><td>53</td><td>527</td></tr>
<tr><td>87</td><td>622</td></tr>
</table>

L. N. CASSADAY ET AL. v. JAMES M. ANDERSON.

(Case No. 3390.)

1. LIEN.— Though under our blended system of law and equity a creditor
   may sue upon a debt, and in the same action seek to set aside a con-
   veyance of land because made in fraud of his rights as a creditor, such
   suit does not give a general creditor prosecuting it a new and inde-
   pendent right of lien on the property alleged to have been fraudulently
   conveyed.
2. SAME.— Such a lien can only be secured by the institution of a suit in a
   court exclusively of equity jurisdiction.   The creditor desiring to acquire
   a specific lien has an adequate remedy at law by attachment, and the
   only province of equity in a case like the present, would be to remove
   a cloud caused by the fraudulent conveyance as an obstruction to a fair
   sale.
3. LIEN — LIS PENDENS.— Upon a bill filed by a simple contract creditor, he
   obtains no right of priority in the distribution of the fund reached by the
   bill, though it is otherwise when a bill is filed by a judgment creditor.
   The judgment creditor who first institutes his suit and entitles himself to
   the benefit of the law of lis pendens, obtains a lien on the assets which
   his bill seeks to reach.
4. DISTINGUISHED.— This case distinguished from Scott v. McMillen, 1
   Littell (Ky.), 302.

a

APPEAL from McLennan. Tried below before the Hon. X. B. Saunders.

The following agreed case was filed in this cause:

Appellee James M. Anderson was plaintiff below, and instituted this suit to recover possession of the lot of land in controversy, alleging that A. M. Veal, on the 21st day of May, 1861, filed his petition in the district court of McLennan county, state of Texas, on three promissory notes, executed by William W. Williamson to said Veal, and made William W. Williamson and his son John Williamson, defendants, alleging the execution, making and delivery to him of the notes by William W. Williamson, and request to pay and non-payment; also alleged that William W. Williamson had owned one hundred and sixty-six and two-thirds acres of land in McLennan county, and exchanged the same with one L. F. Puckett for the lot in controversy in this suit, and made a conveyance of said land to said John, who made a deed for the said land, one hundred and sixty-six and two-thirds acres, to L. F. Puckett, and said Puckett made a deed to said John for the lot in controversy, situate in Waco county aforesaid; that this was on the 11th day of May, A. D. 1861; and Veal alleged in his petition further, that he held said notes at said dates; and that said conveyance to said lot was contrived and made to said John in fraud by them both, for the purpose of hindering and delaying said Veal, and defraud him of his just and lawful action as a creditor of said William W. by reason of said notes, and that William W. had no other property, means or effects. Both William W. and John were legally cited on the day when suit was commenced, to appear and answer petition, and on the law day appeared by counsel and answered therein. Said Veal prayed for judgment for the amount due by reason of said notes, and a decree subjecting said lots in controversy to the payment of said judgment and costs. The cause was continued from time to time until the 23d day of May, 1867, when judgment was rendered in favor of Veal against said William W. for over four hundred dollars and costs, and a

decree against William W. and John Williamson, decreeing
that an order issue to the sheriff of said county, directing him
to sell said lot in controversy, as under execution. That the
order of sale was issued by virtue of the order, after legal
advertisement, on the first Tuesday in October, 1868; the lot
was legally sold at the court house door of said county, at auc-
tion, and appellee, James M. Anderson, became the purchaser,
paid the purchase money, and the sheriff executed to him a
deed of conveyance for said lot, and the same was legally
recorded in the office of the clerk of the county court of said
county. That appellants were in possession, claiming the same.
as their own, and praying for a decree divesting defendants of.
title and for possession, costs, etc.

Appellants answered by a general denial, and plead spe-
cially that they were the owners of the lot in controversy by
reason of two chains of title, and were and had been in pos-
session since July, 1861.

First. That on the 25th day of May, 1861, a judgment was
rendered against William W. Williamson before a justice of
the peace in said county, and that an execution was issued on
said judgment; the lot was levied on, and after having been.
properly advertised, legally sold by virtue of the execution
on the first Tuesday in July, 1861, and the same was pur-
chased by one James Harris, who paid the purchase money,.
and the constable who levied and sold made a proper deed of
conveyance to said Harris, which was legally recorded, and
then by conveyances regularly down to appellants, all legally
and properly recorded in the office of the clerk of the county
court of said county. Also, appellants claimed by deed of
conveyance as follows:

· B. Hardwick conveyed lot in controversy to L. F. Puckett
April 12, 1858.

. On May 11, 1861, William W. Williamson conveyed one hun-
dred and sixty-six and two-thirds acres to John Williamson.
That in consideration of the conveyance of the one hundred
and sixty-six and two-thirds acres of land on May 11, 1861,

L. F. Puckett conveyed the lot in controversy to John Williamson.

That John Williamson conveyed one-half of the lot to A. J. Buchanan, November 22, 1864. And in 1866, March 9, John Williamson conveyed the other half of lot in controversy to John H. Brown, and thence conveyances to defendants. All these conveyances were legally recorded when made.

It is further agreed that this is a second suit by appellee to try the title to the land; his first suit having been decided adversely to him, and affirmed on appeal to supreme court, and reported in 36 Tex., 652.

It is agreed that this second suit was commenced within one year after said affirmance. No question was made on this point, and it is only mentioned because the opinion is referred to in briefs.

Upon the trial the parties proved the allegations in their respective pleading, and the cause having been submitted to the court without a jury, judgment was rendered for appellee as prayed, and defendants appealed.

We agree that the above states the case on the facts correctly.

EVANS & DAVIS,

J. M. MAXEY,

*Attorneys for Appellants.*

JAMES M. ANDERSON,

*Appellee.*

*J. M. Maxey* for appellants.

I. Where rights had grown up and parties were in possession of land, holding and claiming under valid deeds for years, hearing nothing of the Veal suit, certainly the doctrine that *lis pendens* was notice to them is far-fetched and out of the pale of any rule of law to be found in any of the reported cases accessible to counsel. The delay and laches in the prosecution of the Veal suit were unreasonable and could affect no right acquired during the long delay in its prosecution. Shields *v.* Boon, 22 Tex., 193; Chambers *v.* Shaw, 23. Tex.,

165; Highsmith v. Ussery, 25 Tex. Sup., 96; Trimble v. Boothby, 14 Ohio, 109; Ehrman v. Kendrick, 1 Met. (Ky.), 146; Hull v. Deatly, 7 Bush (Ky.), 687.

II. There must be a close and continuous prosecution, or the doctrine of *lis pendens* does not apply. Freeman on Judgments, sec. 202; Clarkson v. Morgan, 6 B. Mon., 441; Watson v. Wilson, 2 Dana, 406.

III. It cannot be seriously contended that the mere filing of Veal's suit created a lien upon the land. What is a lien? It is the right to possess and retain property until some charge against it is paid. How are liens created? By act of law, as in judgment liens, vendors' liens; or by act of parties, as in mortgages, deeds of trust, etc. 1 Story's Eq., § 506; High on Injunctions, p. 18, sec. 26. Veal's suit had not the effect of a lien, either legal or equitable. The correct view of the case unquestionably is, that Veal's suit created no lien because he invoked no process before judgment to place the lot in the custody of the law so as to create a lien.

IV. The principle of *lis pendens* applies only to those who acquire an interest from the defendant *pendente lite*. Green v. Winter, 1 Johns. Ch., 39; 2 Wall. 250; Stuyvesant v. Hall, 2 Barb. Ch., 151; Parks v. Jackson, 11 Wend., 442. *Lis pendens* is only constructive notice of the pendency of the suit as against persons who have acquired some title to the property involved in the litigation as between the parties to the suit. It is, says Edwards in his work on Judgments, universally true that *lis pendens* applies only to rights or interests involved in the controversy and acquired of a party thereto after the institution of the suit. Freeman on Judg., sec. 202; Hopkins v. McLaren, 4 Cow., 677; Curtis v. Hitchcock, 10 Paige, 399. Harris and his vendees could not be affected by Veal's suit, because all the title defendant in that suit had to the lot had passed out of him by execution sale and before any judgment was obtained or any lien created. To say that they were thus affected would be to confound all distinctions between a purchaser at execution sale and a voluntary purchaser of the de-

fendant *pendente lite.* In the case of Lee *v.* Salinas, 15 Tex., 495, it was decided, among other things, that the interest of a party in land may be sold under execution pending suit. What was to prevent the land from being sold under Harris' judgment against Williamson, rendered four days after the filing of Veal's suit? Veal was a creditor and so was Harris; and after the rendition of Harris' judgment, on the 25th of May, 1861, he became a judgment creditor ; Veal was not. The moment Harris had his execution levied upon the land he acquired a lien upon it. Veal had none until after the rendition of his judgment, which was more than seven years after Harris had acquired title under his judgment and execution.

*Evans & Davis* also for appellants.

*John L. Dyer* also for appellants.

I. A creditor at large, *i. e.,* a simple contract creditor having no specific lien by judgment, execution, attachment or otherwise, cannot maintain an action to set aside a fraudulent transfer of his debtor's property and subject any specific property of such debtor to the satisfaction of his debt; and such lien, or a judgment and execution returned *nulla bona,* is indispensable to a creditor's right of action in such cases. Day *v.* Washburn, 24 How., 354; Halbert *v.* Grant, 4 Mon. (Ky.), 580; McKinley *v.* Combs, 1 Mon. (Ky.), 105; Jones *v.* Green, 1 Wall., 330; Anderson *v.* Cassaday, 36 Tex., 653; Stewart *v.* Fagan, 2 Woods' (U. S.) C. C., 218; McElwain *v.* Willis *et al.,* 9 Wend., 548; Wiggins *v.* Armstrong, 2 Johns. Ch. (N. Y.), 144; Hendricks *v.* Robinson, id., 283; Brinkerhoff *v.* Brown, 4 Johns. Ch. (N. Y.), 671; Spader *v.* Davis, 5 Johns. Ch. (N. Y.), 280; Beck *v.* Burdett, 1 Paige (N. Y.), 305; Dunlevy *v.* Tallmadge, 32 N. Y., 460; Peyton *v.* Lamar, 42 Ga., 134; Bump on Fraudulent Conveyances, 2d ed., p. 521, and note citing authorities; High on Injunctions, secs. 25, 26, 94 and 250.

II. A judgment rendered in 1867, in the district courts of this state, became a lien only from the date of its rendition

(under act of November 9, 1866, then in force creating such liens) on lands of the judgment debtor, situate in the county where such judgment was rendered; and such judgments, in the absence of any lien force existing prior to their rendition, by attachment lien or other lien, in connection with the cause of action on which such judgments were rendered, whether recoverable at law or equity, could have no lien force prior to the rendition of such judgment; and therefore another creditor of such debtor, obtaining judgment, levy, sale and purchase of debtor's property before the rendition of judgment on said first mentioned suit, takes the better title. Act 9th November, 1866; Pasch. Dig., vol. 2, art. 7005, and authorities cited under first proposition.

III. The doctrine of *lis pendens* can have no application where the suit pending from which the notice would be derivable shows, from the allegations making and constituting the cause of action, that the party claiming the benefit of such doctrine has no superior or exclusive right to the subject matter thereof. Anderson *v.* Cassaday, 36 Tex., 653. A reversal is asked herein.

*Herring, Anderson & Kelley* for appellee.

I. That the *lis pendens*, if it ever existed, was lost by the unreasonable delay in the prosecution of Veal's suit. Shields *v.* Boon, 22 Tex., 193; Chambers *v.* Shaw, 23 Tex., 165; Highsmith *v.* Ussery, 25 Tex. Sup., 96; Trimble *v.* Boothby, 14 Ohio, 109; Ehrman *v.* Kendrick, 1 Met. (Ky.), 146; Hull *v.* Deatly, 7 Bush (Ky.), 687. There must be close and continuous prosecution, or his *lis pendens* is lost. Freeman on Judgments, sec. 202.

II. This is not a suit of the character that would let in the doctrine of *lis pendens*. Because Veal's suit was an action in *assumpsit*, and before judgment obtained was seeking to set aside a conveyance of the lot in controversy from W. W. Williamson to John Williamson, for fraud, and because none but judgment creditors can attack a conveyance to hinder, delay

or defraud creditors, or unless the property is brought into the custody of the law, in some of the modes known, as shown by the fact. This is elementary and needs no authority.

III. The doctrine of *lis pendens* applied only to those who acquire an interest from the defendant *pendente lite.* Green *v.* Winter, 1 Johns. Ch., 39; 2 Wall., 250; Stuyvesant *v.* Hall, 2 Barb. Ch., 151; Parks *v.* Jackson, 11 Wend., 442; Freeman on Judgments, sec. 202; Hopkins *v.* McLaren, 4 Cow., 677; Curtis *v.* Hitchcock, 10 Paige, 399. *Lis pendens* does not apply, because Harris became the purchaser on July 2, 1861, under a valid judgment, execution and sale, and the possession of himself and his vendees was continuous up to the present time. All the title the defendant had in Veal's suit had passed out of him long before Veal obtained his judgment. Veal had no lien upon the property until he obtained his judgment, and had none then, because there was nothing upon which the lien could attach.

IV. Harris having purchased the property at judicial sale on the 2d of July, 1861, with his deed recorded, and being in possession of the property, he was a necessary party to the suit of Veal *v.* Williamson, and inasmuch as he was not made a party, he and his vendors were unaffected by the judgment in Veal's suit.

V. The only reason why a judgment at law was necessary before asking relief in equity where the jurisdiction of courts of law and equity obtain, is that courts of equity had no power to render judgment on an action of debt alone. Bump on Fraudulent Conveyances, p. 511.

VI. That if a claim was purely equitable, even where the courts of law and equity are separate, courts of equity would take cognizance in the first instance, and at the same time entertain a prayer to remove obstructions interposed by fraudulent conveyances. Bump on Fraudulent Conveyances, p. 516; Scott *v.* McMillen, 1 Littell (Ky.), 302; Scott *v.* Coleman, 5 Monroe (Ky.), 74; Chittenden *v.* Brewster, 2 Wall., 196; Miller *v.* Sherry, id., 249; Bayard *v.* Hoffman, 4 Johns. Ch., 450;

Beck *v.* Burdett, 1 Paige, 308; Corning *v.* White, 2 Paige, 567; Tilford *v.* Burnham, 7 Dana, 110; Steele *v.* Taylor, 1 Minn., 274. That the questions involved have been decided in favor of appellee by this court, we refer to Smith *v.* Clopton, 4 Tex., 114; Hall *v.* McCormick, 7 Tex., 278; Kerr *v.* Hutchins, 46 Tex., 385; Ward *v.* McKenzie, 33 Tex., 316.

BONNER, ASSOCIATE JUSTICE.— If it be admitted that this, the second suit in trespass to try title to the land in controversy between the same parties, is so far a new and different suit that the former decision of this case (Anderson *v.* Cassaday, 36 Tex., 652) is not *res adjudicata* as to the law of the particular case, it at least should be respected to the extent that it is binding upon us, unless we are fully of the opinion that it is incorrect.

We have laboriously examined numerous authorities bearing upon the points decided in that opinion, and have found none which satisfy us that it should be overruled under the facts as presented.

Our system being one of blended law and equity, Veal in the same proceeding could sue upon the indebtedness due him by William W. Williamson, and also seek to set aside the conveyance of the land to John Williamson, because made in fraud of Veal's rights as a creditor.

Such proceeding could be sustained upon the grounds that the remedy in equity would be more adequate, and that the conveyance, unless removed, would be a cloud upon the title which would prevent the sale of the property at a fair valuation, to satisfy the judgment which Veal might obtain against William W. Williamson. Bump on Fraudulent Conveyances, 508; Freeman on Executions, § 430.

Veal's suit, however, would not have given him a new and independent right of lien on the property, unless he would have acquired such lien by reason of having brought a similar suit in a court exclusively of equity jurisdiction.

It is a well established doctrine that the jurisdiction of a

court of equity will not attach when there is an adequate remedy at law.

If the property had been fraudulently conveyed, and it was feared that, pending the suit and before judgment, other rights might have intervened, Veal had an adequate remedy at law by the levy of attachment under the statute, and by which he would have acquired a specific lien.

After judgment, he could proceed by levy and sale of the property under execution in the first instance. Lynn *v.* Le Gierse, 48 Tex., 138; Freeman on Executions, § 430.

If the property, as in the case under consideration, was land, then the statutory judgment lien would attach.

Hence it would seem with us, that the aid of a court of equity would not have been required to give the lien, but only to remove the cloud caused by the fraudulent conveyance, as an obstruction to a fair sale.

As a general rule, however, in such cases, the jurisdiction of a court of equity attaches by virtue of a lien created either by operation of law, as by judgment, attachment or other proceeding in the nature of a proceeding *in rem*, or by contract. It is said by Mr. Bump that "a fraudulent transfer is valid against all persons except those who proceed to appropriate the property by due course of law to the satisfaction of the grantor's debts. As it is valid against a simple contract creditor, such creditor cannot ask the aid of a court of equity to set aside the transfer, for it does not interfere with his rights. Equity has jurisdiction of fraud, but it does not collect debts. A creditor must establish his demand at law, and obtain a lien upon the property, before the transfer interferes with his rights or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance. Such specific right does not exist until he has bound the property by judgment, or by judgment and execution, as the case may be, and has shown

that he is defrauded by the conveyance in consequence of not being able to procure satisfaction of his debt in a due course of law. Then, and then only, he acquires a specific right to be satisfied out of the property conveyed, and shows that he is a creditor, and is delayed, hindered and defrauded by the conveyance." Bump on Fraudulent Conveyances, 511; Anderson *v.* Cassaday, 36 Tex., 653; Halbert *v.* Grant, 4 Mon., 581; McKinley *v.* Combs, 1 Mon., 105; Jones *v.* Green, 1 Wall., 330; Stewart *v.* Fagan, 2 Woods' (U. S.) C. C. 218; Wiggins *v.* Armstrong, 2 Johns. Ch., 144; Brinkerhoff *v.* Brown, 4 Johns. Ch., 671; Beck *v.* Burdett, 1 Paige, 305; Dunlevy *v.* Tallmadge, 32 N. Y., 460; Peyton *v.* Lamar, 42 Ga., 134; High on Injunctions, secs. 25, 26, 94, 250.

As between two creditors, if one has already obtained his judgment and instituted proceedings to set aside the fraudulent conveyance, this will give him priority of right to first have his debt satisfied out of the property, but it seems that this priority does not extend to a simple contract creditor who may institute such a suit. Day *v.* Washburn, 24 How., 356; Robinson *v.* Stewart, 10 N. Y., 196.

Mr. Freeman says: "Upon a bill filed by a simple contract creditor, he obtains no right of priority in the distribution of the fund reached by the bill. Upon a bill filed by a judgment creditor to reach assets not subject to execution at law, or to remove a fraudulent transfer from property liable to execution at law, the rule is otherwise. In either of these contingencies, the judgment creditor who first institutes a suit and serves his subpœna, or otherwise entitles himself to the benefit of the law of *lis pendens*, obtains a lien upon the assets which his bill seeks to reach. Upon obtaining a decree, he is entitled to the fruits of his diligence irrespective of *pendente lite*, alienations or incumbrances. The filing of the bill and the service of process are, in equity, equivalent to a levy upon the property. Other creditors cannot participate in the funds realized until after the complainant has been satisfied." Freeman on Executions, § 434.

Scott *v.* McMillen, 1 Littell (Ky.), 302, mainly relied on by counsel for appellee to show that the mere institution of a suit to set aside a fraudulent conveyance would create a lien, was a proceeding in equity by Scott, the creditor of McMillen, an absconding debtor, and against whom he had no legal remedy.

There is not a full statement of facts, but it seems to have been in the nature of a proceeding *in rem*, in which there was an attachment and injunction, the latter having been dissolved but subsequently reinstated. The court in the opinion expressly states, that "when the debtor, by absenting himself from the country, renders all proceedings at law against him ineffectual, the chancellor, regardless of his practice in ordinary cases, will lay hold of the property alleged to be fraudulently conveyed, examine the fraud, inquire into the justice of the creditor's demand, and finally, by acting on the thing, grant the appropriate relief." 1 Littell, 306.

In a subsequent part of the opinion, it is said that the property gave jurisdiction to the court.

It further seems from the statement of the case, that prior to the conveyance under which the other defendants, who were also creditors of McMillen, claimed title to the property, Scott, the plaintiff, obtained judgment at law against McMillen, who had returned to the state, and had sued out execution with a return of *nulla bona*, and thereby brought himself within the general rule.

The other creditors did not prosecute their claims to judgment, but relied on conveyances direct from McMillen, who had obtained a reconveyance to himself of the lands which had been previously fraudulently conveyed by him.

They did not act in concert with Scott to set aside the fraudulent conveyance of the common debtor, McMillen, but claimed under him through this reconveyance which he had acquired from his fraudulent vendee, pending Scott's suit.

A careful examination of that case does not, we think, take it without the general rule, that the equitable proceeding to

bind the property must be based upon a lien or legal seizure of the property, in the nature of a proceeding *in rem.*

We are of opinion that the right to the land in controversy, acquired under the sale by virtue of the judgment of the justices of the peace, vested prior to any lien in favor of Veal, and would consequently be superior; and that there was error in the judgment below.

As the case comes before us on an agreed statement of facts, this court will here render judgment for the land in favor of appellant, and it is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered June 28, 1880.]

ASSOCIATE JUSTICE GOULD's separate opinion. — I concur in the judgment, placing my concurrence on the ground that the law of the case was adjudicated and settled on the former appeal. The statute which enacted that the verdict and judgment against the plaintiff in a suit of trespass to try title should not be conclusive and definite against him, but allowed him to commence a second action within one year, was not intended to destroy the force of the judgment of this court in settling any legal question legitimately involved. The judgment was not allowed to conclude the question of title so as to preclude a second trial, but the force and effect of the judgment was not otherwise weakened or destroyed. If no new facts were presented, but the case came before the court involving the same questions only on which this court had already fully passed, then the court below should have followed the rule laid down in the former decisions of the case in this court.