## Scott *vs.* Jones *et al.*

1. A motion to dismiss a writ of error, which was not made before the argument of the case on the merits, came too late, and could not be considered.

2. Where a bill was filed under the act of 1881, based on a debt alleged to be due by a firm of insolvent traders, and the bill showed that the firm had dissolved before it was filed, the act of 1881 did not apply, and the equity invoked under it failed.

3. The act of 1881 must be strictly construed, and where a bill was brought under it, based on the debts of a firm of traders, but the firm had been dissolved before its filing, the bill would not lie, although one of the partners bought out the other and continued to carry on the business.

4. Outside of the act of 1881, the fact that no creditor had any lien on the property, or claimed title thereto by any allegation of fraud in their purchase, prevents equitable interference by appointment of a receiver.

(*a.*) This case differs from that in 36 *Ga.*, 536.

April 2, 1885.

Practice in Supreme Court. Debtor and Creditor. Insolvency Equity Traders. Injunction and Receiver. Before Judge STEWART. Fulton County. At Chambers. January 15, 1885.

Reported in the decision.

CANDLER, THOMSON & CANDLER; HENRY WALKER, for plaintiff in error.

C. H. & R. B. BARNES; B. F. ABBOTT· ALEX. W. SMITH, for defendants.·

JACKSON, Chief Justice.

Paul Jones and other creditors of the firm of Curran & Scott brought a bill in equity against the individuals composing that firm, and calling it in their bill the late firm of Curran & Scott, and prayed therein that a receiver be appointed to take charge of the assets once belonging to the

firm, but sold, at the dissolution, by Curran to Scott, who assumed the debts.   The bill was amended by bringing in Scott's brother, and charging a fraudulent mortgage to the brother, of the goods so bought by Scott from his partner, Curran, in order to secure him for the money advanced by the brother to pay Curran.   Curran had left the state and gone to Texas, as alleged and believed.   A receiver was appointed to take charge of the goods in Scott's possession and sell the same, unless Scott give bond in the sum of $3,500.00, to answer the claim of creditors; and to this decree exception was taken, and thereupon error is assigned.

1. The motion to dismiss the writ of error came too late, not being made before the argument of the case on the merits, and it cannot be considered.*

2. The equity in the bill invoked from the act of 1881, Code, §3149 (a) *et seq.*, fails, in that the debt is due by a firm, and it had dissolved before the bill was filed, as alleged in the original bill.   Therefore they, Curran & Scott, were not a firm of traders at the time they were sued, and hence the act of 1881 does not apply.   *Comer & Co. vs. Coates & Co.*, 69 *Ga.*, 491.

3. It is replied that this is a case where one of the partners bought out the other and carried on the business; but this court has ruled that this act must be construed strictly.   *Ball vs. Lastinger*, 71 *Ga.*, 678; *Knoxville Iron Co. vs. Wilkins, Post & Co.*, this term.†   It is to stop the trade of a firm of traders who owe money, if they do not pay on demand, that the act was passed; but these two are no longer such traders, and were not when the bill was brought.   Scott alone was at that time a trader.

4. If we look outside of the act of 1881 for grounds of equitable relief in applications for injunction and receiver, the fact that no creditor has a lien on the goods, or claims

*After the argument had progressed for some time on the merits, a motion to dismiss was made, on the ground that there were parties in interest not served with the bill of exceptions.

†*Ante*, p, 493.

title thereto by any allegation of fraud in their purchase, stares us in the face of equitable right to put this property in the hands of a receiver.    42 *Ga.*, 134; 56 *Id.*, 145; 65 *Id.*, 559; 69 *Id.*, 665, 491.

Therefore, hard as the case may appear, and reluctant as this court is to interfere with the chancellor in the exercise of discretion in granting these extraordinary interlocutory remedies, we see no mode of avoiding that interference in this case upon the bill itself, admitting its allegations to be true.    The questions made are not open in this court, as the cases cited will show, and duty requires us to adhere to them.

The case in 36 *Ga.*, 536, is relied upon by defendants in error, and it has been considered as militating against this rule in equity; but it does not, we think, when we look at the facts in that case.    The complainant sold the goods to the defendant, a free trader in Tennessee, and she had them boxed and was threatening to sell all she had to defeat his claim.    It seems to be a case where the complainant claimed title to some of the goods by reason of her fraud in buying from him, and she refused to pay for any.    At all events, he shows that he could not bail her, or attach the goods which she was selling for less than half price, and was entirely remediless, unless an injunction was granted.    But if the real facts were that she had none of the goods she had fraudulently bought of him, then it stands alone as an exceptional case, and there it will so stand in all probability until one just like it makes its appearance again.

Judgment reversed.