S. P. SMITH, SON & BROTHER, plaintiffs in error, *vs.* W. S. McELWAIN *et al.*, defendants in error.

1. Where a bill alleged, in effect, that a certain agent or general manager was appointed to operate certain iron works, to secure the debts of certain creditors holding liens and mortgages thereon, and that complainants contracted with said agent for supplies to feed the hands and stock necessary to operate the works, and in the contract it was stipulated that a certain quantity of iron was to be delivered to complainants, upon which such supplies were to be advanced by them to the extent of $25 00 per ton, and the agent was to have the right to sell the iron at any time during five months, and to pay interest for the advance at one per cent. per month, "as said advances were to run said works;" and where it was further alleged that from time to time such supplies were liquidated by note until all these notes were superseded by a contract made May 9th, 1875, by which the said agent and general manager sold to complainants three hundred tons of pig iron at $32 00 per ton, delivered on board of cars at Rome, Georgia, delivery to commence at once, and the whole three hundred tons to be delivered on or before July 1st, 1875, and where it was alleged that this contract was intended to cover payment in supplies already made before the signing thereof, though its form seemed to contemplate payment in money after delivery of the iron; and where it was also alleged that complainants' advances, beginning November 16th, 1874, and ending July 30th, 1875, amounted to $8,500 00, besides interest, and that all the creditors interested in said works, and for whose benefit they were operated, knew these facts, and that this iron, so made by these supplies furnished by complainants, was thus sold to them by their agent; and that complainants had only received fifty tons of the iron, and that one hundred and eighty tons thereof, made by the use of complainants' supplies, were at the wharf at Rome, and that the agent and certain creditors, so interested and secured, made parties defendant to the bill, had conspired together to take possession of this iron at the wharf and to prevent complainants from getting possession of the balance of the iron thus due them, and paid for by the supplies which made it, and facts tending to show such fraudulent conspiracy were

alleged; and that thus the effort of these defendant creditors was to take the gross product of the said iron works, without paying the operating expenses, though they had full notice and knowledge of the foregoing facts; and where it was alleged that the agent was insolvent, and the works had suspended, and attachments to large amounts had been sued out in Alabama, where they were located; that at least one thousand tons of iron had been made since complainants supplied the means to operate, of which complainants had got but forty-eight tons, though entitled to three hundred; and where, by amendment to said bill, it was averred that repeated assurances and promises were made to complainants by the said agent and his principals that the iron would, in good faith, be delivered or its equivalent paid, some of the said creditor defendants alleging that they had made a good bargain out of the complainants, and meant to hold them to it, and other circumstances were averred going to show fraud and intent to deceive complainants and lull them into false security, which culminated at last in actual seizure of the iron at the wharf; and where the bill prayed for injunction and a receiver, and relief by account and decree against the agent, and especially his principals, who were thus attempting to defraud complainants: *Held*, that there is equity in the bill, and it should not have been dismissed on demurrer, but be heard fully before a jury on its merits.

2. This case is distinguishable from *Cubbedge & Hazlehurst vs. Adams, 42 Georgia Reports, 124,* and the succeeding cases, where it was held that equity would not interfere by injunction unless the complaining creditor had judgment or some subsisting, valid lien on the property; that here complainants' supplies actually made the iron and entered into the very manufacture thereof, and in consideration thereof, the agent, with the full knowledge of the principals, had sold it to complainants and delivered a part, and should have completed its delivery; and in this case, too, a mistake in the contract of sale, in respect to the consideration already received, was alleged, and it needed to be rectified to speak the intention of the parties thereto, so that, if the facts alleged be proven on the hearing, equity will decree full relief to complainants against all the defendants interested, in proportion to their respective interests and defaults—relief more adequate and complete than a court of law can well administer: See *Cohen vs. Meyers, Cohen & Company et al., 42 Georgia Reports, 46.*

Injunction. Receiver. Lien. Debtor and creditor. Before Judge UNDERWOOD. Floyd Superior Court. January Term, 1876.

SMITH & BRANHAM, for plaintiffs in error.

DABNEY & FOUCHE, for defendants.

JACKSON, judge.

This was a demurrer in equity, and the facts and reasons for our judgment are sufficiently elaborated in the syllabus at the head of the case to understand the views we entertain in regard to it.

Judgment reversed.