DODGE *et al. vs.* THE PYROLUSITE MANGANESE COMPANY *et al.*

1. As a general rule, creditors who have not reduced their claims to judgment, and who have no lien, title or interest attaching to the property of their debtor, have no right to invoke interference therewith by injunction and the appointment of a receiver. Even after judgment, there must be some special circumstances to authorize equitable interference in behalf of a creditor seeking to collect his debt.

(*a.*) The creditors in this case, being mere general creditors, show nothing to take themselves without the rule.

(*b.*) A Georgia court has no jurisdiction to dissolve a New York corporation. While unwise and improper management of the affairs of a corporation might furnish ground for complaint by its stockholders, it does not furnish any reason for equitable interference at the instance of general creditors who have not reduced their claims to judgment, and who do not allege any fraud or concealment.

(*c.*) After the creditors have reduced their claims to judgment, if equitable relief should be necessary, it may then be sought.

December 19, 1882.

Equity. Debtor and Creditor. Injunction and Receiver. Corporation. Jurisdiction. Before Judge FAIN. Bartow Superior Court. January Adjourned Term, 1882.

Reported in the decision.

R. K. HINES, for plaintiffs in error.

AKIN & AKIN; GRAHAM & FOUTE; JOHN L. HOPKINS, for defendants.

SPEER, Justice.

This was a bill filed by the plaintiffs in error against the defendants, in Bartow superior court, for relief, injunction and the appointment of a receiver, and in which the following facts are alleged:

That the Pyrolusite Manganese Company is a New York corporation, and under its charter the stockholders are not liable for its debts; that the company has all its property in Georgia, save its office books. The property here was originally valued at $100.000, and the property in New York at $300; that it owes debts to the amount of $60,000 or $70,000, and that its property is now worth about $55,000; that its affairs are wastefully managed, and that it has no credit to borrow money; that its president and treasurer are at war as to its management, each supported by an equal number of trustees and an equal amount of stock; that three attachments have been levied on its property here, aggregating, principal and interest, $55,000; that its mules are in the hands of the sheriff awaiting an order for sale; that its expenditures during 1881 were $67,683.90; receipts from sale and advances on ores $16,421.84; that complainants loaned the respondent $52,625.89; that the excess of its expenditures over its receipts one year was over $50,000.00; that the officers' salaries and other debts due were from $10,000 to $20,000 per annum, all which, it is alleged, clearly show the company is insolvent and can never pay its debts. It is further alleged that the company was a mining company, and for that purpose had acquired 10,000 acres or more of mineral lands, besides wagons, mules, machinery, etc., at a cost of $120,000, an 1 mostly paid for from complainants' money; that on an accounting had, the company admitted an indebtedness to complainants in the above sums, aggregating $52,625.89; that the company has purchased and leased over 5,000 acres of land in Bartow and adjoining counties; that the sum of from $50,000 to

$75,000 has passed through the hands of E. H. Woodward, one of the defendants, during 1879, 1880, 1881, for which he has made no satisfactory showing; that under the act of 1847, no corporation created by the laws of another state can own over 5,000 acres of land in Georgia, except they become incorporated by the laws of this state, and this casts a cloud upon the title upon the lands held by the company, which a court of equity alone can relieve by decreeing that the defendants hold these lands as trustees to pay the debts of said company, and a decree is sought to sell said lands, and that a good title be made to the purchasers at said sale. It is further alleged, that the defendants, Woodward and C. C. Dodge, bound themselves to convey to said company all the lands owned by them in said counties of Bartow, Floyd, Cherokee and Polk (in which the other lands of the company lie), the titles of which were taken in their own name, and likewise agreed not to buy or hold mineral lands individually in said territory; but it is averred that Woodward now holds, in his individual name, lands which had been paid for by the company, and which are subject to the debts of the company. It is further alleged, that under this state of facts as to the management and conduct of the company, and its pecuniary condition in the state of New York, where it was created, the courts there would be authorized to dissolve the corporation and appoint a receiver.

The company, Woodward and C. C. Dodge, being non-residents, the complainants, on the 4th of March, 1882, took out attachments returnable to the July term, 1882, of Bartow superior court, and each have been levied by the sheriff of said county upon the mules, wagons, etc., and all the lands of said company which complainants can point out; that the lands lie in Bartow, Cherokee, Polk and Floyd counties; that under the proceedings, all of said lands will have to be levied on in each county respectively, and each sheriff, after judgment, will have to make a separate sale of said lands that lie in his county,—

whereas said lands are chiefly valuable for their metallic ores, in sufficient quantities to employ capital and labor in large amounts in furnishing markets, supplying orders, etc., and for these causes the separate sale of said lands by the sheriffs would defeat the ends and purposes for which said lands were bought, and thus the interest of the company and creditors would be sacrificed by said sales in detail, and said lands should be sold altogether; that W. P. Ward has levied an attachment to the amount of $500.00 on certain personal property of the company, and they are afraid all the creditors of said company will proceed to levy attachments upon said property, and thereby confusion, costs and expenses will be incurred, and a great part of said property will be lost, unless the chancellor interposes by injunction and a decree of sale is had as prayed for.

It is alleged that the affairs of the company should be placed in the hands of some proper person as receiver to take care of them,—to sell the personal property and manage the balance properly. The defendants are sought to be enjoined from interfering with said property or creating any debts or liens on same; that complainants may have a decree for amount due each respectively, and other creditors may be allowed to join in this litigation, and all the property, both real and personal, be sold and the proceeds brought into court for distribution. The prayer is for all creditors to be made parties, that the sheriffs of the counties named be enjoined from making further levies on said property, receiver be appointed to take charge, that all the real property be sold at one time and place in Bartow county, and that the present officers be enjoined from selling, hypothecating or interfering with the property of the company.

All discovery is expressly waived in complainants' bill from each and all of the defendants.

To this bill respondents demurred upon the ground:

(1.) There is no equity in the bill.

(2.) Complainants are not judgment creditors.

(3.) The insolvency of the defendants or either of them is not alleged.

(4.) A demand for payment is not alleged.

(5.) Complainants have an adequate and complete remedy at common law.

(6.) Complainants show no sufficient cause for repudia. ting the agreement of 28th June, 1881.

The demurrer was sustained, bill dismissed, and complainants excepted.

It will appear from the foregoing synopsis of the complainants' bill that they are creditors under simple contracts, of this corporation ; that they assert or claim no title, interest in, or lien upon the property of this corporation, save and except their attachment liens, which are mere mesne process ; and yet with their suits at law levied and pending, they ask a court of chancery to interfere, take charge of this large property of the company, oust its officers of its management, control and direction, place the same in the hands of a receiver to be sold, to await the decree upon their claims, when established by judgment or decree, and that of the other creditors. The decisions of this court upon this subject have been uniform and in harmony with each other so far as our investigation has gone.

Creditors, without lien or title or some interest therein, and who have not reduced their claims to judgment, have, as a general rule, no right to invoke interference by an injunction and appointment of a receiver. This rule has been several times recognized and acted upon by this court.   42 *Ga.*, 134 ; 56 *Ga.*, 145 ; 65 *Ga.*, 559.

And even where a creditor has a general judgment, and has levied it, and a claim has been interposed under a pauper affidavit for the purpose of delay, and by rea. son of the depreciation of the property there is danger of losing the debt, but he shows no special lien, interference by a court of equity was disallowed.   65 *Ga.*, 559.

v 69—43

There must be some special circumstances to authorize ·equitable interference in behalf of a creditor seeking to ·collect his debt, though it be in judgment, but in such cases :they are maintainable upon their own peculiar facts.

Under this general rule, as these complainants show by ·averment or otherwise neither judgment, nor special lien, nor title, nor interest in the property, they must fall under this general rule, unless the special facts of the case made by the bill, relieve them from its operation. We have looked through with great care and labor this voluminous record, and we cannot find any special facts set forth in complainants' bill that will relieve it.from the operation of the general rule so frequently recognized by this court. Here is a foreign corporation doing business in Georgia, where it has a large and valuable property. It certainly cannot be claimed that a court in Georgia has jurisdiction to dissolve this corporation. It is true, as has been alleged, it may be gravely embarrassed with debt. Still its property is accessible here, open and fixed, and no discovery is sought at the hands of any of these defendants to uncover any that may be fraudulently held, and in the absence of any special charge of fraud and concealment, why should the business of this corporation be arrested, its chosen officers displaced, its property taken from their custody, upon the complaint of creditors who have never yet obtained a judgment upon their debts, and who, so far as we know, may never establish such claims.

It must be remembered that this is a bill filed alone in behalf of these creditors, and not as stockholders, and therefore much of their complaint would and might be properly addressed to a court which had jurisdiction to dissolve this corporation, but no such right is insisted on here. These are simple contract creditors without judgment, lien, title or interest in the property of the corporation, beyond what belongs to every creditor. If there should be any fraudulent alienation or concealment of property liable to debts, or the creation of any fraudulent liens upon its property,

then the statute affords prompt and speedy remedy by attachment; but because the debtor, in the opinion of complainants, is not managing its property as wisely and successfully as it might be done, we do not see how this gives a right to ask the interference of a court of chancery. These creditors are already proceeding by attachment; they have levied and fixed their attachment liens, and until they get their judgments, at least, we deem their application to chancery, to take charge of and direct the sale of this large mining interest for the best interest of all parties concerned, at least to be premature. In the future progress of the case after judgments had, if in the then proposed sale of the property and the distribution of the fund they will then need the aid of a court of chancery, under the peculiar circumstances that may then exist, its door will be opened to their complaint.

But to do this in advance of any lien upon, or title, or interest in said property, as appears from this record, we cannot say the court erred in refusing their applications and sustaining the demurrer. Nor can we see how its refusal can be of any serious damage to complainants. The sale of the personalty can be speedily had, under the law; the realty is fixed and immovable; while on the other hand, an interference now, as sought, would necessarily hasten the ruin and insolvency of a corporation which, though embarrassed, may yet recover and proceed to discharge honestly its corporate duties.

Judgment affirmed.