GUILMARTIN *et al. v.* MIDDLE GEORGIA AND
ATLANTIC RAILWAY COMPANY *et al.*

1. When a guarantee has taken from the guarantor no assurance of the guaranty by mortgage or otherwise, so as to create a lien in his favor upon the property of the latter, the mere existence of the contract of guaranty presents no obstacle, legal or equitable, to such disposition of his property as the guarantor may deem proper; and the fact that a guarantor may become insolvent or may waste his goods before there is a breach of the contract upon the part of the principal and before such time as the guarantor shall have become answerable upon his undertaking, affords no reason for the intervention of a court of equity, nor any reason for the grant of an injunction or the appointment of a receiver to seize and hold the guarantor's estate. Equitable seizures of a debtor's goods, except in cases especially authorized by statute, are not allowable at the instance of unsecured creditors.

2. The assets of a corporation which has contracted as a guarantor are not liable to seizure, either at law or in equity, until after a breach by the principal of the guaranteed agreement; and neither the conveyance of its assets to third persons nor the misappropriation of its funds by its stockholders affords any ground for equitable interference at the suit of the guarantee, when it does not appear either that the principal is insolvent or that there has been any breach by him of the contract which was guaranteed. The mere possibility of a future breach of such contract, with a resulting liability against it as a guarantor, will not authorize the appointment of a receiver to take its assets out of the hands of its stockholders.

Argued May 5, — Decided June 16, 1897.

Petition for injunction and receiver. Before Judge Falligant. Chatham county. March 29, 1897.

*Charles N. West,* for plaintiffs.

*Garrard, Meldrim & Newman* and *Lawton & Cunningham,* for defendants.

SIMMONS, C. J.   It appears from the record, that the stockholders of the Eatonton Branch R. R. Co. were engaged in litigation with each other about the road.   In order to settle this litigation, they made and entered into an agreement whereby they agreed to apply to the secretary of State for a new charter of the road under the sections of the code relating to the same; and further, that, when this charter was obtained, the proper authorities of the company should issue $168,000 of bonds and secure the same by a mortgage upon the railroad property, the bonds to be due thirty years after date, and that the Eatonton Branch R. R. should then be sold to the Middle Georgia & Atlantic Railway Company; that upon the consummation of the sale, the latter railway company should guarantee the principal and interest of the bonds of the Eatonton Branch R. R. Co., and that these bonds should be then distributed amongst the stockholders of the latter company, they receiving the same as the purchase-money of the road.   It was further agreed that certain of the stockholders of the Eatonton Branch R. R. Co., who are now the plaintiffs in this equitable proceeding, should transfer and surrender the stock held by them in the E. B. R. R. Co. to a committee named in the agreement.   Subsequently this agreement was consummated, and the M. G. & A. Ry. Co. purchased the E. B. R. R. Co., and guaranteed the payment of the bonds which had been previously issued by the latter company, and these bonds were then distributed among the various stockholders of the Eatonton Branch company and received by them as provided for in the agreement.   After the guaranty had been made and the M. G. & A. put in possession of the Eatonton Branch road, the M. G. & A. entered into negotiations with the Central of Georgia Railway Company to sell its whole line, including the Eatonton Branch R. R., upon certain terms and conditions named therein.   The Central accepted the proposition, which was substantially as follows:   The Central of Georgia Ry. Co. agreed to purchase the road and all the property of the M. G.

& A. Ry. Co. and pay for it by the issuance of bonds at the rate of $9,000 per mile of railroad purchased, and to secure these bonds by mortgage of the purchased property. Of the bonds so issued by the Central, $168,000 were to be held by a trust company for the purpose of retiring the $168,000 of bonds which had been previously issued upon the Eatonton Branch; $1,000 per mile of them was to be retained by the purchasing company for the purpose of improving the roadbed, etc., of the road purchased; and the balance was to be distributed among the stockholders of the M. G. & A. as the purchase-money of their road. This agreement was carried into effect by the M. G. & A. making and delivering a deed to the Central, and the latter taking possession of the purchased road. The Central was preparing to issue its bonds and to distribute them according to the agreement, when certain bondholders of the Eatonton Branch filed their equitable petition against the Central and the M. G. & A., praying an injunction restraining the Central from delivering the bonds in accordance with the terms of the agreement, and asking for the appointment of a receiver to take charge of them.

The petition alleges, in substance, that the plaintiffs relied upon the guaranty of the M. G. & A. Ry. Co., that the latter had sold all of its franchises, property, etc., and had gone out of business, and was therefore insolvent and would be unable to meet its guaranty when the bonds of the Eatonton Branch road fall due. They prayed that the bonds to be issued by the Central be seized by the court and held as security for the payment of the $168,000 of bonds which had been issued by the E. B. R. R. Co. and guaranteed by the M. G. & A. Ry. Co. They alleged that by the sale the M. G. & A. had disabled itself from performing its contract of guaranty, and that therefore the whole of said guaranty had matured and become due, and they prayed a decree of payment of the bonds against the M. G. & A.

Plaintiffs afterward amended their petition in several respects; but the allegations made therein are not material to a decision of the case, and it is therefore not necessary to state them here. Defendants answered; but it is unnecessary, in

the view we take of the case, to set out the answers here. Upon the hearing, the court refused to grant an injunction or appoint a receiver, and the plaintiffs excepted.

1. It will be observed, from the above statements of facts, that the bondholders of the Eatonton Branch road, when they agreed to take the guaranty of the M. G. & A. R. Co., did not contract with the latter company that it should give them a mortgage or lien of any kind to secure its endorsement or guaranty of the bonds, and that no mortgage or lien was given for that purpose. Having taken no lien, they now seek by the interposition of a court of equity to do what they neglected to do in their contract. They seek to seize the assets of the guarantor and to hold them by a receiver of the court until their bonds shall mature in the year 1926, upon the ground that the guarantor has stripped itself of all of its property, has gone out of business, and has become insolvent. We know of no law or rule in equity which would authorize such a proceeding. The guarantor agreed to pay these bonds in case the principal, the Eatonton Branch R. R. Co., failed to pay them, or it might be said to have guaranteed the ability of the principal to pay them. It is certainly not liable to pay the bonds until the principal fails to pay, or becomes unable to pay. As far as our research extends, there is no principle of law or equity which would prevent a guarantor who has given no lien to secure the guaranty from selling or disposing of his property as he may deem proper. The fact that by so doing he becomes insolvent, or that he wastes his property, before a breach of the guaranteed contract, will not authorize a court of equity to seize his assets and hold them up until the maturity of the contract or until there is a possible breach thereof. Were the law otherwise, it would deprive guarantors of the right to dispose of their property in every case before any liability had accrued against them. Under such a system, no man would be safe in guaranteeing the debt of another, because his property would be bound from the time he made the guaranty until the payment of the debt, and he would be unable to dispose of it. It would place him in a position similar to that of a surety on the official

bond of a financial officer of this State. Under our code, the property of one signing such a bond is bound from the time of signing it, and the extension of this principle, as here sought, would, as before remarked, prevent the sale or alienation of the property of any guarantor.

This petition was not brought under section 2717 of the Civil Code, which allows courts of equity to grant injunctions and appoint receivers for the collection and preservation of the assets of an insolvent trader, upon the application of a certain number of creditors representing one third of the unsecured indebtedness, where the debt has become due and payment has been, upon demand, refused. Here the debt was not due, if indeed the relation of debtor and creditor existed at all; and no demand or refusal to pay was alleged. The case therefore falls within the general rule in equity, that a general creditor who has no lien, and has not reduced his claim to judgment, has no right to apply to a court of equity to aid him in the collection of his unsecured debts. This rule is well established by the decisions of this court, and, indeed, of all other courts which have equity jurisdiction. *Cubbedge & Hazelhurst* v. *Adams*, 42 *Ga.* 124; *Johnson & Smith* v. *Farnum*, 56 *Ga.* 144; *Mayer & Co.* v. *Wood, March & Co.* Ibid. 427; *Crawford* v. *Spurling*, Ibid. 611; *Dodge* v. *Pyrolusite Manganese Co.*, 69 *Ga.* 665; *Bessman* v. *Cronan*, 56 *Ga.* 559; *Scott* v. *Jones*, 74 *Ga.* 762; *Kimbrell* v. *Walters*, 86 *Ga.* 99; 5 Thompson on Corporations, § 6839 and notes.

Since the decisions just cited have been made by this court, the legislature has ratified and adopted them in section 4918 of the Civil Code, which declares that "Creditors without lien can not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity." This being so, the trial judge did not err in refusing the injunction and the appointment of a receiver to seize and hold the assets of the M. G. & A. Ry. Co., because of the allegations in the petition that that company, the guarantor, was conveying its assets to third persons or that its funds were being misappropriated by its stockholders. Especially is this true when the petition does not allege that the principal

debtor, the Eatonton Branch R. R. Co., is insolvent or that there has been any breach by it of the guaranteed contract. The mere possibility that thirty years hence, the time when the bonds would mature, there might be a failure on the part of the principal to pay the bonds, with a resulting liability against the guarantor, would not authorize the appointment of a receiver to take the assets of the guarantor out of the hands of its stockholders. Equity will not impound the property of a guarantor for thirty years, especially where other creditors have claims against him, in order to ascertain at the end of that time whether the principal will be able to meet the obligation against him, which is the subject of the guaranty.

For these reasons and others which might be mentioned, the judgment of the court below is

*Affirmed. All the Justices concurring.*