**KELLEAM et al. v. MARYLAND CASUAL-
TY CO. OF BALTIMORE, MD., et al.**

No. 2059.

Circuit Court of Appeals, Tenth Circuit.

June 17, 1940.

Rehearing Denied July 17, 1940.

Glenn O. Young, of Sapulpa, Okl. (A. L. O'Bannon, of Okmulgee, Okl., on the brief), for appellants.

W. E. Green and Robert J. Woolsey, both of Tulsa, Okl. (J. C. Farmer, of Tulsa, Okl., on the brief), for appellee Maryland Casualty Co.

Heber Finch, of Sapulpa, Okl. (R. A. Young, Jr., of Fort Smith, Ark., and Pliny Frye, of Wewoka, Okl., on the brief), for appellees Ethel Riddler and others.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

On August 8, 1936, Leggette D. Kelleam died intestate, a resident of Creek County, Oklahoma. He was survived by E. A. Kel-leam and Nell Southard, his brother and sister, and by Fannie Bates and Mrs. Klyde Bates, two half sisters, and by a number of children of prior deceased half brothers and half sisters. On August 25, 1936, E. A. Kelleam and Nell Southard petitioned the County Court of Creek County, Oklahoma, for the appointment of E. A. Kelleam as administrator of the estate of Leggette D. Kelleam, deceased, alleging that they were the sole and only surviving heirs. On the same day E. A. Kelleam was appointed administrator and duly qualified as such by executing a bond in the sum of $12,000, signed by the Maryland Casualty Company as surety. No notice of appointment was published. E. A. Kelleam thereupon took possession of the estate and administered it. He filed his final account and petition for the determination of heirship and for a decree of distribution, again alleging that he and his sister were the sole and only heirs of the deceased.

Evidently, prior to the hearing of the petition for final account, Fannie Bates, a half sister, heard of the probate proceedings and contacted E. A. Kelleam and Nell Southard concerning the same. A contract was then executed by E. A. Kelleam and Nell Southard with Fannie Bates and the surviving husband and children of Mrs. Klyde Bates, now deceased, whereby Kelleam and Nell Southard agreed to deposit $4,000 in the bank, together with the contract, and agreed that this sum should be paid to them for any interest they claimed in the estate, providing none of the heirs of any of the other half brothers or half sisters of deceased came in and filed a claim, but that if, prior to final distribution, any party claiming to be interested in the estate should appear in the County Court and question the right of E. A. Kelleam and Nell Southard to the entire estate, they would be entitled to withdraw the $4,000 in escrow. The contract also provided that it would not constitute entering an appearance in the County Court of Creek County by Fannie Bates or the heirs of Mrs. Klyde Bates.

After the execution of this contract, E. A. Kelleam filed an amended petition for approval of his final account, and for a decree determining heirship and distribution of the estate. He now listed the one living half sister and the children of the deceased half brothers and half sisters, and for the first time claimed for himself and Nell Southard the entire estate as an ancestral

estate. The amended petition for approval of the final account, determination of heirship and distribution of the estate, was set for hearing without notice being given to the half sister or any of the children of deceased half brothers or half sisters, other than by publication.

Thereafter, on the day appointed for the hearing, the County Court entered its judgment, order and decree, finding and determining that the estate of Leggette D. Kelleam, deceased, was an ancestral estate, and ordered distribution thereof to E. A. Kelleam and Nell Southard.

On September 21, 1937, a petition to reopen the proceedings was filed and an amended petition was filed on December 28, 1937, by the children of the prior deceased half brothers and half sisters of Leggette D. Kelleam, deceased, setting forth their relationship to deceased and stating that they had no notice of the proceedings; that the distribution of the estate was fraudulently and collusively obtained, and asking that the decree of the County Court be set aside. E. A. Kelleam and Nell Southard demurred to this petition, and on September 15, 1937, the County Court sustained the demurrer. The petitioners then appealed to the District Court of Creek County, where their appeal is now pending.

After the decree of the County Court sustaining the demurrer to the petition to reopen the case was entered, E. A. Kelleam made a conveyance of some of the real estate which he had obtained from the estate to his son, Joe Kelleam, and Nell Southard made a like conveyance of the real estate which she had obtained from the estate to her son, J. R. Southard, Jr. The conveyances were made without consideration.

On June 8, 1938, The Maryland Casualty Company filed its bill of complaint in the United States District Court for the Northern District of Oklahoma, making the full blood heirs, as well as the half blood kinsmen of deceased, Leggette D. Kelleam, defendants, seeking exoneration on its bond, and asking that a receiver be appointed to preserve the decedent's property pending the outcome of the dispute between the heirs, and that the property be impressed with an equitable lien to satisfy and discharge any final judgment that might be obtained between the litigating parties. By cross petition the defendants who had been excluded from heirship by the decree of the County Court filed their answer and counter claim asserting their claim to an interest in the estate and joined in the application for the appointment of a receiver. June 27, 1938, J. M. Scott was appointed receiver of the property of the estate. E. A. Kelleam, Joe E. Kelleam, Nell Southard and J. R. Southard, Jr., all filed special pleas to the venue and the jurisdiction of the court, and upon such pleas being overruled, they moved to strike the cross petition for want of jurisdiction of the subject matter. The motion to strike was overruled and they thereupon filed their answer and plea in abatement and answer to the cross petition. Issues were joined, the cause was tried to the court, and findings of fact and conclusions of law were made by the court.

The court found that the estate of Leggette D. Kelleam was not an ancestral estate; that the decree of the court was obtained by fraud and was therefore void; that the half sister and the children of prior deceased half brothers and half sisters were heirs and entitled to share in the estate; that E. A. Kelleam and his surety were liable to the defrauded heirs; that the surety company was entitled to exoneration and to have the assets impressed with a trust. A decree in conformity with the conclusions of the court was entered, providing for an accounting; that if no accounting be rendered, that then the lien on the property in the hands of the receiver be foreclosed. From this decree an appeal has been taken.

Appellants assert: First, that the District Court was without jurisdiction for the following reasons:

(a) Because a diversity of citizenship was neither alleged nor established.

(b) Because residence in the Northern District was neither alleged nor established.

(c) Because the United States District Court has no jurisdiction in probate to review or set aside decrees of the County Court exercising probate jurisdiction, nor to determine heirship.

(d) Because the United States District Court is without authority to divest an administrator appointed by the County Court in probate of the decedent's estate or to direct such administrator in the discharge of his duties.

(e) Appointment of a receiver without notice, at the instance of a surety upon the bond of an administrator who has been twice exonerated, is beyond the jurisdiction of the United States District Court.

Second, that the evidence of appellees was insufficient to establish fraud or other grounds warranting vacation of the decree of the County Court.

The controversy as to the diversity of citizenship centers around the citizenship of the Kelleams and the Southards. The complaint alleges that E. A. Kelleam and Joe Kelleam are residents of Arizona; that Nell Southard and J. R. Southard, Jr., are residents of Oklahoma; and that all of the remaining defendants are residents and citizens of Arkansas and Oklahoma.

■ Jurisdiction of the United States District Court between citizens is based on diversity of citizenship, and an allegation that a party defendant is a resident of a state is not equivalent to an allegation of citizenship in that state. Such an allegation is insufficient to confer jurisdiction upon the District Court. Realty Holding Co. v. Donaldson, 268 U.S. 398, 45 S.Ct. 521, 69 L.Ed. 1014; Wolfe v. Insurance Co., 148 U.S. 389, 13 S.Ct. 602, 37 L.Ed. 493; Robertson v. Cease, 97 U.S. 646, 24 L. Ed. 1057.

■ The failure to properly allege diversity of citizenship between plaintiff and defendant will not, however, defeat the jurisdiction of the court if, as a matter of fact, such diversity exists. Halsted v. Buster, 119 U.S. 341, 7 S.Ct. 276, 30 L.Ed. 462; Continental L. Ins. Co. v. Rhoads, 119 U.S. 237, 7 S.Ct. 193, 30 L.Ed. 380; Howe v. Howe & Owen Ball Bearing Co., 8 Cir., 154 F. 820; Fidler v. Roberts, 7 Cir., 41 F. 2d 305.

■ Where a defective averment of diversity of citizenship is made in the bill of complaint, the whole record may be looked to for the purpose of curing such defect, and if the requisite citizenship is anywhere averred in the record, or facts are therein stated which in legal intendment constitute such allegations, that is sufficient. And where the court is satisfied, in the light of all the testimony, that the averment of residence in a designated state was intended to mean, and reasonably construed, must be interpreted as meaning that the party was a citizen of that state, it is sufficient. Sun Printing & Publishing Ass'n v. Edwards, 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027.

The record shows that in his petition filed in the County Court, E A. Kelleam stated under oath that his address was Drumright, Oklahoma, and that Nell Southard was a resident of Blanchard, Oklahoma. Appellants E. A. Kelleam and Joe Kelleam in their answer admit that at the day and date of the institution of this action they were residents of Arizona, and appellants Nell Southard and J. R. Southard, Jr., in their answer admit that at the day and date of the institution of this action they were residents of the state of Oklahoma.

■ Proof that a person is a resident of a state is prima facie evidence that he is a citizen thereof, and shifts the burden of showing that his domicile and citizenship is other than the place of his residence to him who alleges it. Mahon v. Somers et al., C.C.Ohio, 112 F. 174; Anderson v. Watt, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078; Desmare v. United States, 93 U.S. 605, 23 L.Ed. 959.

■ Here appellants do not contend that facts exist which would establish that any of the defendants are citizens of the state of domicile of the surety company, nor do they contend that such is the fact. Their only complaint is that plaintiff in its complaint does not state that E. A. Kelleam, Joe Kelleam, Nell Southard and J. R. Southard, Jr., are citizens of the state in which they admit they reside. In the absence of any showing that they have ever resided in any other state, the finding of the court that diversity of citizenship exists is sustained.

■ This is an action to impress a trust on real and personal property with a fixed situs in the Northern and Western Districts of Oklahoma. Section 116, 28 U.S. C.A., provides that a local action involving property of a fixed character, lying partly in one district and partly in another, may be brought in the District Court of either district. Section 118, 28 U.S.C.A., provides for service of summons on absent defendants in suits to enforce liens. These are the applicable statutory provisions to an action such as we have here, and not Sections 111 and 112, 28 U.S.C.A., upon which appellants rely.

■ Appellants urge that the United States District Court has no jurisdiction in probate to pass upon decrees of the County Court exercising probate jurisdiction, nor to determine heirship, and that the United States District Court is without authority to divest an administrator, appointed by the County Court in probate, of the decedent's estate or to direct such administrator in the

discharge of his duties. With this statement of principle we find no fault. Appellants rely largely on the case of Wells v. Helms, et al., 10 Cir., 105 F.2d 402, to sustain their contention. In that case this court, speaking through Judge Phillips, said that an administrator appointed by a state court is an officer of that court and takes possession of decedent's property in obedience to the orders of the court; that his possession is the court's possession and cannot be disturbed by any other court, and that in such an action one claiming an interest in the estate could not seek a judgment against the administrator in his representative capacity.

However, the court also said in that case that a distributee of an estate who is a citizen of a state other than the one in which distribution is made may establish his right to share in such an estate and enforce such adjudication against the administrator personally, or his sureties, or against any other person liable therefor, or proceed in any way which does not disturb the actual possession of the property by the state court. See, also, Waterman v. Canal-Louisiana Bank Co., 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80; Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 619, 56 S.Ct. 600, 80 L.Ed. 920; Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 281, 83 L.Ed. 285.

■ Here no attempt is made to interfere with the administrator's possession of the estate or with the administration of the estate by the court. The estate has been closed, the property has been distributed to those claiming to be the heirs and entitled thereto; it stands in their names, and this is a proceeding not against the administrator but against those who procured the property. The proceeding is against them in their individual capacities, and is an attempt to deprive them of what it is alleged they procured through a void judgment resulting from the fraud practiced by them in its procurement. In Hewitt v. Hewitt et al., 9 Cir., 17 F.2d 716, it was held that a court of the United States in the exercise of its equity powers, where diversity of citizenship gives jurisdiction over the parties, may deprive a party of the benefits of a judgment or decree fraudulently obtained in a state court, since the decree operates on the parties and not on the state court. See, also, Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870.

■ That a surety may maintain an action against its principal to obtain indemnity against its liability on the bond before it has been called upon to pay under the bond is unquestioned. Section 88, Okl. Stat.1931, 12 Okl.St.Ann., § 1108, provides: "A surety may maintain an action against his principal, to obtain indemnity against the debt or liability for which he is bound, before it is due, whenever any of the grounds exist, upon which, by the provisions of this code, an order may be made for arrest and bail, or for an attachment."

See, also, Walton et al. v. Williams, 5 Okl. 642, 49 P. 1022; Morley Const. Co. et al. v. Maryland Casualty Co., 8 Cir., 90 F. 2d 976; Glades County, Fla., v. Detroit Fidelity & Surety Co., 5 Cir., 57 F.2d 449.

It has also been frequently held that in such an action a receiver may be appointed pending the determination of the issues in the action for exoneration. 12 Okl.St. Ann. § 1551, Sec. 773 Okl.Stat.1931; Sanford v. United States Fidelity & Guaranty Co., 116 Ga. 689, 43 S.E. 61; Stulz-Sickles Co. v. Fredburn Const. Corp., 114 N.J.Eq. 475, 169 A. 27; Central Surety & Ins. Corp. et al. v. Bagley, D.C.Colo., 44 F.2d 808; Southwestern Surety Ins. Co. v. Wells, D.C.Pa., 217 F. 294.

■ But, say appellants, here the surety company has been twice exonerated by the judgment of the court, and therefore there can be no possibility of liability on the bond. However, if the judgment of the county court is void, as it is alleged, then it is a nullity and can afford no protection to the surety on its bond, for a void judgment confers no right upon anyone. Condit v. Condit, 66 Okl. 215, 168 P. 456; Jefferson v. Gallagher, 56 Okl. 405, 150 P. 1071; Loeser v. Bank & Trust Co., 6 Cir., 163 F. 212; 34 C.J. p. 509, § 811.

■ The whole controversy therefore centers around the question whether the judgment of the Probate Court was procured by fraud and is void.

From the record it appears that when Leggette D. Kelleam died, he was survived by E. A. Kelleam and Nell Southard, his brother and sister, and by two half sisters and a number of children of prior deceased half brothers and half sisters. Within five days of his death, appellants E. A. Kelleam and Nell Southard filed their petition in the County Court asking for the probation of the estate and that E. A. Kelleam

be appointed administrator. Knowing of the existence of the heirs of the half blood, nevertheless they alleged that they were the only heirs of the deceased. Nell Southard's address was given as Blanchard, Oklahoma. E. A. Kelleam gave his address in the petition as care of Theral Hotel, Drumright, Oklahoma. Although it appears by inference that at the time of the filing of this petition he was a resident of Sells, Arizona, and notwithstanding that he was a non-resident, he did not call this to the court's attention, nor did he appoint a resident agent as required by Oklahoma law. Section 1073, Okl.Stat.1931, 58 Okl. St.Ann., § 162. No notice was published of the pendency of the petition for administration of the estate. In due course of time E. A. Kelleam, as administrator, filed his final account asking that the estate be distributed to him and to his sister, Nell Southard, and that he be discharged as administrator. Here again it is alleged that he and his sisters are the only heirs. No mention is made of the heirs of half blood, nor reason assigned why they would not inherit. Evidently, before this petition came on for hearing, Mrs. Fannie Bates, a half sister, and the husband and children of Mrs. Klyde Bates, another half sister, who had died since the death of Leggette D. Kelleam, gained information of the estate. Now a contract is made by E. A. Kelleam and Nell Southard with these heirs, in which they agree to pay them $4,000, upon condition, however, that none of the other heirs of the half blood appear in the proceedings; that if they did, the $4,000 would not be paid. The money was placed in escrow with the contract to await the happening of the contingency upon which the contract was predicated. Then E. A. Kelleam files an amended petition for approval of final account and for determination of heirship, in which he for the first time lists the sisters of the half blood and the children of the prior deceased brothers and sisters of the half blood, giving their residence. And now for the first time he states that the estate is ancestral and therefore belongs to him and his sister.

An examination of the record reveals that the estate which is now claimed as ancestral could not possibly be such. The claim to the ancestral estate is that Leggette D. Kelleam inherited this property from his mother, Mary A. Kelleam, who died intestate on December 4, 1928. Her estate was duly probated and administered and at the time of her death consisted of five lots in the town of Blanchard, Oklahoma, the title to which, by final decree of the court entered September 2, 1929, became vested in Leggette D. Kelleam, E. A. Kelleam and Nell Southard, in equal shares. None of these lots was listed as assets of the estate of Leggette D. Kelleam, deceased. How flimsy the claim to the property as an ancestral estate is appears when we observe that the ancestor died December 4, 1928; that none of the property which is set forth in the inventory in the estate before us was owned by her during her lifetime. The record reveals that two Drumright, Oklahoma properties were acquired by Leggette D. Kelleam, one in 1932 and one in 1935; that the Oklahoma City properties were acquired in 1933; that the interest in the so-called Sam Vance lease was acquired in 1930; that a 1936 Model Ford automobile is claimed as ancestral property; that a number of notes claimed as ancestral property were all dated from one to seven years after the death of the ancestor.

When the appellee-heirs herein filed their petition to reopen the judgment in the County Court, E. A. Kelleam and Nell Southard promptly proceeded to attempt to place the real estate beyond the possible reach of the other heirs in the event they succeeded in having the judgment set aside. Conveyances were made to their children without consideration. Such conduct is the act of a guilty conscience. When one has defrauded another and fears detection, he often seeks to manipulate the title to property in his hands so that it may not be available in the event judgment is recovered against him. The only conclusion which can be reached from an examination of the transcript is that E. A. Kelleam was a faithless trustee; that he designedly and intentionally proceeded from the beginning to conceal the status of the estate from the court and the heirs; and that he and his sister conspired together to defraud the remaining heirs of that which was their just due. The conclusion of the trial court is the only one that could be reached.

The judgment is affirmed.