## PELEG BRISTOL *et al.*

*v.*

## COUNTY OF CARROLL.

*Filed at Ottawa May 18, 1880.*

1. SWAMP LANDS—*lands need not be swamp or overflowed.* The act of Congress granting swamp and overflowed lands to the State of Illinois, required the Secretary of the Interior should transmit a list of such lands in this State to the Governor, and under that act the lands described in such list became vested in the State, whether they were swamp or overflowed lands or not.

2. SAME—*proof of title.* The list and plats of swamp· lands transmitted to the Governor, under the act of Congress of September. 28, 1850, by the Secretary of the Interior, and a duly certified copy of the list of such lands, certified by the Auditor to the county clerk, of the swamp lands in a county, under the acts of the legislature granting the same to the several counties in which they are situated, will be sufficient evidence to show title in the county to the lands embraced in such lists and lying in such county.

3. RIPARIAN OWNERS—*right to alluvial formations.* To entitle a party to claim the right to an alluvial formation, or land gained from a lake by alluvium, the lake must form a boundary of his land. If any land lies between his boundary line and the lake, he can not claim such formation.

4. SAME—*when he takes to center of stream.* Where the fee in a water course does not belong to the grantor, no words of description in his grant will convey to the center of it; and when the United States has passed its title to land bordering on·and covered by a lake, a subsequent grant of adjoining land, purporting to bound it on the lake, will not invest the grantee of the second grant with the right to take to the center of the lake, and such grantee will have no right to alluvial formations therein.

5. POSSESSION—*its extent.* Where a mere intruder enters upon land, he will acquire possession only of the part he occupies. The mere naked possession, without color of title, is adverse only to the extent of the actual inclosure, which must be definite and notorious.

APPEAL from the Circuit Court of Stephenson county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. J. & J. W. McCOY, for the appellants:

In ejectment, the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's. *Marshall* v. *Baker*, 35 Ill. 106; *Hague* v. *Porter*, 45 id. 318.

The plaintiff has not shown that the land in question is swamp or overflowed land.

No title was ever in the United States or the county of Carroll to the land in question, it being in the bottom of a meandered lake, and no survey that could be made would interfere with the title of the defendants as riparian owners.

The maps, plats and field notes of the government survey become a part of the evidence of title to enable the grantee to identify his boundary and lands. The grant is to be taken most strongly against the grantor. Where the government has not reserved any right or interest that might pass by the grant, the grant will be construed most favorably to the grantee. *Middleton* v. *Pritchard et al.* 3 Scam. 510.

Meander lines are not boundary lines, and are only made for the purpose of defining the sinuosities of the bank of the stream, as a means of ascertaining the quantity of the land in the fraction subject to sale. In preparing the official plat from the field notes, the meander line is represented as the border line of the stream, and shows to a demonstration that the *water course*, and not the meander line as actually run on the land, is the boundary. *Railroad Co.* v. *Schurmier*, 7 Wall. 272; *Middleton* v. *Pritchard et al.* 3 Scam. 510, 522.

Riparian owners of land bounded by a stream not navigable in the technical sense of the term, hold the land to the center thread of the stream, and the water and soil under it are exclusively that of the riparian owner to that point. *Middleton* v. *Pritchard*, 3 Scam. 510; *Canal Trustees* v. *Havens*, 11 Ill. 554; *City of Chicago* v. *Laflin et al.* 49 id. 172; *Braxon et al.* v. *Bressler*, 64 id. 488.

The right to alluvial formations is a right inherent in the property—an essential attribute of it—the result of natural law in consequence of the local situation of the land. *Municipality No. 2* v. *Orleans Cotton Press*, 18 La. 122; *The King* v. *Lord Yarborough*, 3 Barn. and Cress. 91; *Banks* v. *Ogden*, 2 Wall. 57; *Warren* v. *Chambers*, 25 Ark. 122; *County of St. Clair* v. *Livingston*, 23 Wall. 46.

Messrs. NEFF & STEARNS, for the appellee:

It was not incumbent on the appellee to prove that this land was swamp land. The grant to the State is conclusive. *Johnson* v. *Towsley*, 13 Wall. 72; *French* v. *Fryan*, 3 Otto, 169; *Keller* v. *Brickley*, 78 Ill. 133.

No public rights are affected by the decision of this suit. The right of the public to an easement in the land is not involved, nor will the decision of this suit determine the rights of either party as against the public.

This court has often held that by the mere act of conveying land bounded by a stream or water course, without expressing any intent to the contrary, the government of the United States not only may, but as a matter of fact does, convey to its grantee the soil under such stream or water course to the middle thereof, subject to the easement of a right of passage in the public. *Middleton* v. *Pritchard*, 3 Scam. 510; *Canal Trustees* v. *Havens*, 11 Ill. 554; *Chicago* v. *Laflin*, 49 id. 172; *Livingston* v. *St. Clair County*, 64 id. 56; *C. and P. R. R. Co.* v. *Stein*, 75 id. 41.

It was not necessary for the appellee to prove the regularity and correctness of the acts of executive officers of the government.

The legislature of this State has made a list of swamp lands certified by the county clerk sufficient evidence of title. Laws 1854, (2d sess.) p. 21, sec. 8.

Appellants have shown no claim adverse to the title of appellee. Mere acts of possession, unaccompanied by a claim of ownership hostile to the title of the legal owner, do not constitute adverse possession. *Jackson* v. *Berner*, 48 Ill. 203.

The possession of land under a deed for more than twenty years will not give title to such portion of the land possessed as lies beyond the lines therein described, if this was occupied by mistake, supposing it to be covered by the deed. *Dow* v. *McKenney*, 64 Me. 138; *Worcester* v. *Lord*, 56 id. 265.

There is no proof that the possession of appellants had continued for twenty years before this suit was brought.

Adverse possession does not run against the appellee. Appellee is a county—a branch of the government—a *quasi* corporation, existing not for its own benefit, but for the benefit of the public. The weight of authority seems to be, that *laches* can not be imputed to such a body, and against it the Statute of Limitations does not run. Angell on Lim. secs. 36, 37; *Moreland & Willes* v. *State Bank*, Bre. 263; *County of Madison* v. *Bartlett*, 1 Scam. 67; *Galbraith* v. *Littiech*, 73 Ill. 209; *Symonds* v. *Clay County*, 71 id. 355.

Riparian rights depend upon the terms of the proprietor's title in relation to the boundary of his estate. 3 Kent's Com. 434; *Canal Trustees* v. *Havens*, 11 Ill. 554; *City of Chicago* v. *Laflin*, 49 id. 172; *C. and P. R. R. Co.* v. *Stein*, 75 id. 41; *Livingston* v. *St. Clair County*, 64 id. 56.

Where the boundaries in a deed neither expressly nor by implication call for a natural monument, the calls for courses and distances must govern. *Spruill* v. *Davenport*, Busbee L. 134; *Riley* v. *Griffin*, 16 Ga. 141; *McIver's Lessee* v. *Walker*, 9 Cranch, 173; *Yoder* v. *Swope*, 3 Bibb, 204; *Sawyer* v. *Cox*, 63 Ill. 130.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, brought by the county of Carroll against Peleg and Henchcliff Bristol, to recover the possession of the west half of lots 1 and 2 of the north-west quarter of section 5, in township 23, north of the base line in range 4 east of the fourth principal meridian, in Carroll county, Illinois. The plaintiff recovered, and the defendants appealed.

The plaintiff's claim of title is under the act of Congress of September 28, 1850, entitled "An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits," whereby were granted all the swamp and overflowed lands then belonging to the United States lying within the limits of the State of Illinois, to said State, (9 U. S. Stat. at Large, p. 519); and an act of the General Assembly of this

State, approved June 2, 1852, granting all such swamp and overflowed lands, granted to the State by said act of Congress, to the counties respectively in which the same might lie or be situated.  Laws 1852, p. 178.

The act of Congress made it the duty of the Secretary of the Interior to make out an accurate list and plats of such swamp and overflowed lands in the State, and transmit the same to the Governor of the State.  Such list was accordingly made out and transmitted to the Governor, and filed in the office of the Auditor of Public Accounts on January 30, 1855, in which list are embraced the lands in controversy.  A list of the swamp and overflowed lands lying in the county of Carroll, in this State, certified to by the Auditor of the State, was filed in the office of the clerk of the county court of Carroll county, in which list appear the lands in controversy.

In 1854 the above act of the General Assembly of June 2, 1852, was amended by providing, among other things, that such lists should be sufficient evidence of the title to the lands therein described, and should have the same force and effect as patents issued for school lands, and that duly certified copies of such lists should be received in all courts, and have the same force and effect as the original lists.  Laws 1854, p. 19, § 8.  A duly certified copy of such list made by the county clerk of Carroll county was exhibited in evidence, showing therein the lands described in the declaration.

These documents, with the above named acts of Congress and of the General Assembly, showed the title to the lands in controversy to be in the county of Carroll.

It was not necessary, as suggested by appellants, to show that the lands were in fact swamp and overflowed lands.  It was enough that they were found included in the list of swamp and overflowed lands which the Commissioner of the General Land Office transmitted to the Governor as such. The act of Congress conferred upon the Secretary of the Interior the power of determining what lands were of the

description granted by that act, and the decision of his office on that subject is controlling. *French* v. *Fryan*, 93 U. S. 169.

November 1, 1855, a patent was issued by the United States to Daniel St. Ores, conveying the *east* half of lots 1 and 2 of the north-west quarter of section 5, in township 23. north of the base line of range 4 east of the fourth principal meridian, in Carroll county, Illinois, under which patent the defendants derive title.

The plaintiff, then, has title to the *west* half, and the defendants to the *east* half of lots 1 and 2 of the north-west quarter of section 5.

In 1834 this township 23 was surveyed by Charles R. Bennett. He meandered the edge of a swamp or lake situate on the west side of section 5 and the east side of section 6, the centre of which he indicated upon his plat as an "impassable lake."

The work of Bennett appears to have been rejected, so far as respected the northern quarters of the northern tier of sections in said township. In July, 1850, and January, 1851, William Pollock, under contract with the United States, completed the survey of township 23, and his work appears to have been approved by the land department at Washington. The season being uncommonly dry he seems to have recognized neither swamp nor impassable lake in the part of the township he surveyed, but ran his lines through to their meeting points. The line run by him, between sections 5 and 6, was very nearly in the centre of the tract meandered by Bennett, and he completed the lines in sections 5, 6 and 7, left unfinished by Bennett by reason of the swamp or lake.

The northern quarters of the northern tier of sections in township 23, being fractional, are divided each into three lots, which are numbered consecutively, from south to north, as lots 1, 2 and 3 of such quarter sections. In the north-west quarter of section 5, lots 1 and 2, the tracts in controversy, are rectangular pieces of land, approximating one hundred and sixty rods each from east to west, by eighty rods

from north to south, and contain 82.02 and 82.42 acres respectively.

The line meandered by Bennett, if applied to the lots as they now exist, would start on the south line of lot 1, at a point about twenty-five rods west of the centre line of the lots, that is, a north and south line through their centre dividing them into east and west halves, and would run in a north-easterly course, crossing said centre line very near the line between lots 1 and 2, and running through lot 2, east of said centre line, would leave lot 2 at a point on its north line about ten or twelve rods east of the centre line of the lot.

The claim of the defendants is, that the *lake* here is the west boundary of their land,—the *east* half of lots 1 and 2,— and that they, as riparian owners, are entitled to the land which they are in possession of, as an alluvial formation,— land gained from the lake by alluvium.

To entitle defendants to set up such a claim, of course the lake must be the west boundary of their land. But the assumption that the lake is their west boundary is without warrant. Their west boundary, instead of being the lake, is the east line of the west half of lots 1 and 2. Long before the east half of these lots was patented to St. Ores, under whom defendants claim, the United States had, on September 28, 1850, made the grant of the *west* half of these lots to the State of Illinois, under which grant the plaintiff derives title.

By that act of Congress of September 28, 1850, and at that time, the title to the west half of these lots passed from the United States and vested in the State of Illinois. *Railroad Co.* v. *Smith*, 9 Wall. 96 ; *Keller* v. *Brickey*, 78 Ill. 133. The patent from the United States to St. Ores, for the *east* half of the lots, was not issued until November, 1855, more than five years afterwards.

Where the fee in a water course does not belong to the grantor, of course no words of description will convey to the centre of it. "A deed bounded on a highway, *prima facie*, carries the title of the grantee to the centre of the road, on the

assumption that the grantor owns it; but when it appears that it was in fact owned by another, the terms of the deed are satisfied by a title extending to the roadside." *Dunham* v. *Williams*, 37 N. Y. 251, and see *Canal Trustees* v. *Haven*, 11 Ill. 554.

Such would have been the case even if the patent had purported to bound the land west on the lake.

But it did not do so. It purported to convey simply the east half of the lots, using no other description and giving no intimation of any lake or water course. This made the west boundary the east line of the west half of the lots. The west boundary of the east half of these lots must, by all the rules of subdivision of government lands, be a straight north and south line through the centre of the lots.

The official plat shows nothing different from the patent. Bennett's meander line, if it is to be looked at for any purpose, nowhere in its course corresponds with the line dividing the east and west halves of the lots. But defendants' lands were not purchased according to any plat of Bennett's survey. The plat of the government survey in the land office and the one according to which the United States sold and St. Ores purchased the east half of the lots, is that of the Pollock survey, which meanders nothing. All that appears upon that plat, as to any meandering whatever, is a note on the margin, that "a line of meanders was run along the eastern and western margins of the swamp or lake, in sections 5, 6, 7 and 8, and those sections thereby made fractional. The survey of said sections having been completed in 1851, the areas of the several tracts are recalculated," etc.

What the defendants claim as being a lake upon which their lands were bounded on the west, and whereby they took to the centre of the lake, appeared upon the plat as land surveyed and the area thereof calculated, and the records of the land office showed, at the time St. Ores purchased, that it had been previously sold by the government as the west half of

lots one and two,—the east half of which lots St. Ores purchased.

It is evident, then, that there are no riparian rights involved here, and that, however much land may have been gained from the lake since the time St. Ores purchased, there can, under that purchase of the east half of the lots, be no rightful claim as riparian owners thereof to any land west of the east line of the west half of the lots.

Another defence set up by the defendants is that of the Statute of Limitations, arising from an alleged twenty years adverse possession. Waiving the question whether the statute applies in this case, we do not find that there is sufficient proof that the possession of defendants had continued for twenty years before this suit was brought.

True, Peleg Bristol, one of the defendants, testifies that he had been in possession of these lots of land for twenty years, and about a year or a year and a half more, probably. At the time this testimony was given this suit had been pending seven months. He says that he went into possession under the deed to him from French. That deed was dated December 8, 1858, and this suit was commenced September 2, 1878. The interval is more than three months short of twenty years.

Henchcliff Bristol, the other defendant, testifies: "We bargained for that land either in (I think it is one or the other,) 1857 or 1858, and went to work on the land. We commenced, I was thinking,—we commenced work on the land getting out wood, rail timber and fencing, that winter; I would not be positive. But we commenced plowing on there the next spring or summer; I think it was in summer, or else in August or September following."

He states afterwards that he thinks it was in the winter of 1857 or 1858 that they bargained for the land.

French testifies that his impression is defendants commenced to work on the land some time previous to his deed to them of December 8, 1858. He would think they went to

work on it in September or October previous, of that same year.

This is all the testimony in the case as to the time when defendants went into possession of this land. It comes short of showing with any clearness and certainty that they went into possession before September 2, 1858, a time twenty years before the commencement of this suit.

There is some testimony as to the possession of St. Oras, the remote grantor of defendants, as far back as 1852. He made some improvements, as, a house and stable, and had four to six acres of wheat on the land. But whether any of these improvements extended over on the west half of the lots, and if so how much of them was on the west half, is altogether indefinite. The evidence is that the main part of his improvements was on lot 2; that the buildings were on that lot, and the witness states he thinks the field enclosed was on both sides of the meandered line.

Now, on lot 2 the meandered line of Bennett's survey runs entirely east of the dividing line between the east and west halves of the lots. There seems to be no certainty that any of the improvements on lot 2 were west of this dividing line; and if on lot 1 there might have been any west of such line, there is no certainty as to their extent.

The doctrine seems to be that when an usurper enters upon land, he acquires possession, inch by inch, of the part which he occupies, and that the mere naked possession, without color of title, is adverse only to the extent of the actual enclosure, which must be definite and notorious. Tyler on Ejectment, 894.

There is a failure of proof here of any definite actual enclosure made by St. Ores on the west half of these lots.

Upon the vague, indefinite and uncertain evidence upon the subject, we think the court below was justified in finding against the defendants on the question of fact of twenty years adverse possession.

Perceiving no error on the part of the court below in finding the issue for the plaintiff, the judgment is affirmed.

*Judgment affirmed.*