WILLIAM WILTON *et al.* Plaintiffs in Error, *vs.* RUDOLPH VANHESSEN *et al.* Defendants in Error.

*Opinion filed February 25, 1911.*

1. WATERS—*the State owns beds of navigable lakes and waters within its borders.* Under the enabling act of April 18, 1818, by which the State of Illinois was admitted into the Union "upon the same footing with the original States, in all respects whatever," the State became vested with the title to the beds of all navigable lakes and bodies of water within its borders in trust for the people, the fact of navigability being the test in determining the title.

2. SAME—*title to beds of meandered lakes is in the State.* The title to beds of lakes or ponds which the Federal government has meandered in its surveys is in the State in trust for the people, whether such body of water is navigable or non-navigable, the reason being, that by meandering a lake or pond the Federal government indicates that it is a navigable body of water, concedes that the title to the bed is in the State, and abandons all claim thereto by selling or otherwise disposing of the surrounding lands as being bounded by the edge of the water.

3. SAME—*owners of surrounding land own bed of lake not navigable or meandered.* Where a lake or pond is not navigable and has never been meandered by the Federal government, which has surveyed and sold the land the same as though no body of water were there, the purchasers from the government, and their grantees, own the bed of the lake or pond and are entitled to the exclusive possession of the portions owned by them, respectively. (*Fuller* v. *Shedd*, 161 Ill. 462, distinguished.)

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

COOKE, POPE & POPE, and PAUL MACGUFFIN, for plaintiffs in error.

ARTHUR BULKLEY, and GEORGE W. FIELD, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is a writ of error sued out of this court by the complainants in a bill for injunction to review the action of the circuit court of Lake county in dismissing said bill for want of equity upon a general demurrer interposed by the defendants. The bill alleged that the complainants, who are plaintiffs in error in this court, are, respectively, the owners in fee simple and in possession of certain tracts and parcels of land adjacent to each other in sections 10, 11 and 12, in the town of Avon, in Lake county, Illinois, which are particularly described in exhibits attached to the bill; that upon a portion of each of said tracts there is situated a portion of the waters of a shallow inland, unnavigable pond, which pond is not meandered but is included within the corners of the original government survey and was included in the grant or patent of the land from the United States government; that complainants derived title through *mesne* conveyances from the United States government, and that the most remote grantors in their respective chains of title derived title from the government through cash patents, each of which patents described and conveyed, by legal description, certain tracts or lots included in the original government survey and shown upon the government plat; that said pond is not, and has never been, a navigable body of water, either in fact or in law, and does not possess the capacity for the transportation of vessels suitable for useful commerce of the surrounding country nor afford a channel for useful commerce of practical utility to the public and has no connection with any navigable body of water; that said pond is a shallow body of water, in which wild rice, rushes, reeds, lilies, flags and other wild grasses and aquatic vegetation grow in profusion; that in season large flocks of wild fowl frequent the waters located on said land

and a constant supply of fish of various varieties exists in said pond; that the chief and only value of said overflowed land at the present time is as a hunting and fishing ground for the owners thereof; that the complainants, respectively, own the waters of said pond on their respective tracts of land and possess the sole and exclusive privilege of hunting thereon and fishing therein, and that neither the defendants nor any person or persons have any right to enter upon said lands or upon the waters thereon or any right to the game found thereon or to the fish therein; that the right and privilege of hunting and fishing are of great value to the owners of said lands and give said lands their only market value in their present condition; that the defendants, without any right so to do, have repeatedly and persistently, wrongfully and willfully gone upon each of said tracts of land, and, accompanied by numerous friends whom they have invited to accompany them, have particularly so gone upon those portions of said tracts upon which the waters of said pond extend, with row boats, for the purpose of hunting and fishing; that while upon said waters the defendants, and each of them, and their friends and acquaintances, have hunted and killed and taken away wild ducks and other fowl found thereon, and have caught, taken and carried away fish from said waters and threaten to continue so to do, and that complainants fear and believe that unless restrained by an order of court they will carry such threat into execution, and will thereby destroy the very valuable property rights of complainants by appropriating to themselves the only valuable use to which said property is suitable in its present condition; that during a large portion of the year, and particularly during the hunting and fishing season, for the purpose of making trespass upon complainants' lands more convenient for them to hunt and fish, the defendants have established temporary domiciles or habitations adjacent to the said pond, where they and their confederates and associates rendezvous and maintain so-called

pleasure resorts for the accommodation of themselves and others whom they invite and encourage to come there to board and hunt and fish upon the said waters owned by complainants, and that defendants, or some of them, make a business of furnishing fishing and hunting privileges upon complainants' lands to their confederates, associates and friends, whereby they earn a livelihood, and keep a supply of boats which they rent to their confederates, friends and associates for the purpose of rowing and sailing upon said waters and hunting and fishing thereon, and that the defendants threaten to continue so to trespass upon the lands owned by complainants, and that complainants fear they will continue so to do unless restrained by order of court; that complainants have frequently notified the defendants not to go upon the said lands owned by them or upon the waters thereon, for the reason that the same were private property belonging to complainants, and have warned the defendants to desist in the future from going upon or crossing any of the respective portions of dry land adjacent to said pond owned by complainants, but that the defendants have entirely ignored such warning and have continued to trespass upon the complainants' lands as above set forth and threaten to continue so to do in the future; that in passing from the public highway to said place of rendezvous the defendants, their associates, customers and boarders pass over and across dry land owned by the complainants; that complainant Mary E. Fowler has heretofore instituted and prosecuted divers suits in trespass against some of the defendants on account of trespasses committed by them upon the said lands owned by her, in and about the unlawful pursuits, purposes and objects hereinbefore alleged and has recovered judgments in such suits for damages, but that, nevertheless, the defendants threaten to continue to go upon and across the said lands and waters of said Mary E. Fowler; that some of the defendants are insolvent, so that no damages can be collected from them, and that it would re-

quire a multiplicity of suits to be instituted and prosecuted on behalf of said Mary E. Fowler in order to enforce her remedy at law and that such remedy would not then afford full and adequate relief; that while the other complainants have not instituted any suits such as have been instituted and prosecuted by said Mary E. Fowler, yet they have no adequate remedy at law to redress the wrongs and injuries which are being inflicted upon their said lands and waters for the same reasons above stated with regard to said Mary E. Fowler, and that a multiplicity of suits would be necessary by each of complainants in order to enforce any rights at law, which multiplicity of suits will be avoided by the granting of a writ of injunction herein. The prayer of the bill was that the defendants, their agents, servants and confederates, and each of them, be restrained and perpetually enjoined from further occupying and trespassing upon the said lands of complainants or upon the waters above said land and within the boundary lines thereof, and for general relief.

Plaintiffs in error contend that the facts alleged in the bill, which were admitted by the filing of the demurrer, show that they have the exclusive right of hunting and fishing on the waters of the pond upon the land owned by them; that this right is being violated by the defendants, who threaten to persist therein; that the defendants are committing continuous trespasses on the dry land owned by plaintiffs in passing back and forth between the highway and pond; that the facts alleged show that irreparable injury will result to their property rights in the premises, that some of the defendants are insolvent, that the remedy at law is inadequate and that a multiplicity of suits will be avoided by the issuance of the injunction, wherefore they contend that the court erred in sustaining the demurrer, dismissing the bill for want of equity and denying the writ of injunction. The only contention made by the defendants is that the title to the bed of the pond or lake was not in com-

plainants but was in the State in trust for the people, and for that reason complainants are not entitled to the relief sought by their bill. It is not contended that the allegations of the bill are insufficient in case complainants are held to have title to the bed of the lake.

In order to determine whether the complainants secured title to the bed of this pond from the United States government it is only necessary to determine the circumstances under which the United States government retained title to the beds of lakes and ponds and the circumstances under which title became vested in the State. A clear and correct exposition of this policy is given in *Broward* v. *Mabry,* 50 So. Rep. 826, where it is said: "Under the common law of England the crown, in its sovereign capacity, held the title to the beds of navigable or tide waters, including the shore or the space between high and low-water marks, in trust for the people of the realm, who had rights of navigation, commerce, fishing, bathing and other easements allowed by law in the waters. This rule of the common law was applicable in the English colonies of America. After the Revolution, resulting in the independence of the American States, title to the beds of all waters navigable in fact, whether tide or fresh, was held by the States in which they were located, in trust for all the people of the States, respectively. When the constitution of the United States became operative the several States continued to hold the title to the beds of all waters within their respective borders that were navigable in fact, without reference to the tides of the sea, not for purposes of disposition to individual ownerships, but such title was held in trust for all the people of the States, respectively, for the uses afforded by the waters as allowed by the express or implied provisions of law, subject to the rights surrendered by the States under the Federal constitution. * * * New States, including Florida, admitted 'into the Union on equal footing with the original States, in all respects whatsoever,' have the same

rights, prerogatives and duties with respect to the navigable waters, and the lands thereunder, within their borders as have the original thirteen States of the American Union. Among these prerogatives are the right and duty of the States to own and hold the lands under navigable waters for the benefit of the people, as such prerogatives are essential to the sovereignty, to the complete exercise of the police powers and to the welfare of the people of the new States as of the original States of the Union." This same doctrine is announced in *Pollard* v. *Hagan,* 3 How. 210, and *Goodtitle* v. *Kibbe,* 9 id. 471.

Pursuant to the enabling act of April 18, 1818, Illinois was admitted into the Union "upon the same footing with the original States, in all respects whatever." It will thus be seen that by its admission into the Union the State of Illinois became vested with the title to the beds of all navigable lakes and bodies of water within its borders, and whether or not title became so vested depended upon the test of navigability as applied to any particular body of water. As to what the policy of this State has become in respect to its title so acquired from the United States government it is not necessary to discuss here, as that question has no bearing whatever upon the matters in controversy. The essential matter for determination here is whether the title to the bed of this pond ever became vested in the State of Illinois, or whether, upon the admission of this State into the Union, it was retained by the United States government with full power to dispose of it, by patent or otherwise.

The only ground upon which the State of Illinois can now claim to own the bed of any pond or lake within its borders is under that clause of the enabling act which provided that the State should be admitted into the Union upon the same footing with the original States, in all respects whatever. It could only acquire such title by virtue of that clause upon its admission into the Union, and, as has been pointed out, title by virtue of that clause was acquired only

to the bed of such lakes as were navigable. There is no exception to this policy, unless it be the apparent exception in cases where the government has meandered lakes or ponds and shown the same on its surveys by meandered lines, in which cases we have repeatedly held that the title to the bed of such lakes or ponds is in the State in trust for the people, and that the shore owners, whether the lake be navigable or non-navigable, take title to the water's edge, only. (*Hammond* v. *Shepard,* 186 Ill. 235; *Schulte* v. *Warren,* 218 id. 108; *Fuller* v. *Shedd,* 161 id. 462.) This exception to the general policy,—if, indeed, it be an exception,—is undoubtedly based upon the ground that the Federal government, by its act in meandering a lake, indicates that it is a navigable body of water, concedes that the title to the bed of the same is in the State, and by selling or otherwise disposing of the surrounding lands as bounded by the edge of the water, abandons all claim to the bed. The bill alleges that the lake or pond in question was not navigable and had never been meandered by the United States government, and that a survey was made and the land sold by the Federal government just as though no body of water had existed there. That the government had title to the bed of this pond and the undoubted right to survey the same and convey it to purchasers, there can be no question under the authorities and the general policy above referred to. According to the allegations of the bill the complainants own the bed of this pond according to their respective grants and are entitled to the exclusive possession of the portions owned by them, respectively.

Great reliance is placed by both complainants and defendants upon the case of *Fuller* v. *Shedd, supra.* We do not regard the holding in that case as in point here, for the reason that there the lake in question was not only meandered by the government but was designated as a navigable lake, and under the established rule in this State the title to the bed of the lake became vested in the State upon

its admission into the Union. What we have said here, however, in nowise conflicts with the holding or the reasoning in *Fuller* v. *Shedd, supra.*

Holding, as we do, that under the allegations of the bill title has been shown to be in the complainants to the bed of the lake or pond in question, it is unnecessary for us to determine whether, irrespective of that question, complainants are entitled, under the bill, to an injunction restraining the defendants from further trespassing upon the dry lands owned by them, respectively.

For the reasons indicated, the decree of the circuit court is reversed and the cause remanded, with directions to the chancellor to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*