(No. 18695.—

THE DUPUE ROD AND GUN CLUB, Appellant, *vs.* ERNEST
MARLIERE *et al.* Appellees.

*Opinion filed October 25, 1928—Rehearing denied Dec. 7, 1928.*

GEORGE W. HUNT, and CLARK B. MONTGOMERY, for
appellant.

BUTTERS & BUTTERS, and WOODWARD, HIBBS & POOL, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, the Dupue Rod and Gun Club, a corporation, filed its bill in the circuit court of Bureau county to restrain appellees, seven in number, from hunting and fishing on lands claimed by appellant. Upon issue being joined the cause was referred to a master, who recommended that the bill be dismissed for want of equity as to the land covered by the waters of Lake Dupue. Exceptions to the report were overruled, a decree was entered as recommended, and an appeal has been prosecuted to this court.

Appellant claims to be the owner of certain lands and the lessee of other lands in Bureau county, consisting of several hundred acres, used as a private hunting and fishing preserve. On a part of this land is Lake Dupue, which is about three and a half miles long, from twenty-four to fifty rods wide, and is connected with the Illinois river. The bill alleged that appellant was in possession of all of this land, either as owner or lessee, and that the land had been conveyed by the United States to the State of Illinois by a patent under the Swamp Lands act of 1850, and subsequently had been conveyed by *mesne* conveyances to appellant and its lessors; that appellees had committed numerous acts of trespass on the land by hunting and fishing after repeated warnings from appellant. The prayer was for an injunction against appellees to prevent further trespasses. Appellees by their answer denied the trespasses, and alleged that appellant and its lessors were not the owners of the fee or entitled to the possession of the waters of Lake Dupue or the bed thereof but that the title thereto was in the State of Illinois in trust for the use of the public. Upon the hearing before the master appellant proved its chain of title by a patent from the United States under the Swamp Lands act and *mesne* conveyances to itself and its lessors.

It proved the trespasses and warnings as alleged in the bill. Appellees offered evidence that the lake in a state of nature was navigable at the time Illinois was admitted to the Union. The master found that the lake was navigable at the time Illinois was admitted to the Union; that the bed of the lake belongs to the State in trust for the people; that the patent from the United States was null and void; that the bill should be dismissed as to any part of the land covered by the waters of the lake, and that a permanent injunction should issue as to any and all of the other lands owned or leased by appellant. The decree confirmed the report and dismissed the bill for want of equity.

The questions at issue are as to the ownership of the bed of the lake and the right of appellees to question the title of appellant and its lessors in this proceeding.

When Illinois was admitted to the Union, in 1818, it became vested with the title to the beds of certain navigable lakes and bodies of water within its borders. Whether or not title became so vested depended upon the test of navigability as applied to any particular body of water. Where a lake or pond is not navigable and has never been meandered by the Federal government and the land under the water has been sold or conveyed, the owners are entitled to the exclusive possession thereof. (*Wilton* v. *VanHessen,* 249 Ill. 182.) By the act of Congress of September 28, 1850, the swamp and overflowed lands of the various States, including Illinois, remaining unsold, were granted to the States to enable them to construct necessary levees and drains to reclaim the land. The act made it the duty of the Secretary of the Interior to make accurate lists and plats of such lands and transmit the same to the Governors of the several States, and at the request of the Governor of any State to cause a patent to be issued to such State for such swamp or overflowed lands. Congress also provided that all lands selected and reported to the general land office as swamp or overflowed lands by the several

States entitled to the provisions of the act prior to March 3, 1857, were confirmed in the States, respectively, so far as they remained vacant and unappropriated by actual settlement under the laws of the United States. (*State* v. *New*, 280 Ill. 393.) The investigation and determination of the question as to what lands were swamp and overflowed lands in the various States were committed by Congress to the land department of the Federal government. That department was authorized to determine what lands were swamp and overflowed lands as distinguished from lands covered by navigable waters. The evidence shows that the Secretary of the Interior determined that the bed of Lake Dupue came under the Swamp Lands act of 1850, and he so classified the land as provided in that act and certified that fact to the Governor of Illinois, and upon request of the Governor a patent was issued to the State for the land in question in this case.

On June 22, 1852, the legislature of Illinois passed a statute which provided that all swamp and overflowed lands granted to the State of Illinois by the act of Congress of September 28, 1850, be granted to the counties, respectively, in which the same might lie, for the purpose of reclaiming the same. Section 3 made it the duty of the Auditor of Public Accounts to furnish to each county a full abstract of all the swamp and overflowed lands within the limits of the county. Section 5 made it the duty of the county surveyor to survey all such lands and file with the county a plat thereof. Other sections provided the manner in which the land might be sold by the counties. In 1854 the act of 1852 was amended, by providing that the lists of swamp lands should be sufficient evidence of the title to the lands therein described and should have the same force and effect as patents issued for school lands, and that duly certified copies of such lists should be received in all courts and have the same force and effect as the original lists. (Laws of 1854, p. 14.)

The evidence shows a compliance with the act of 1852. The Auditor of Public Accounts furnished to Bureau county a full abstract of all swamp and overflowed lands within its limits as patented to the State from the United States. The county surveyor of Bureau county surveyed the lands as certified and filed a plat thereof with the county. The county then proceeded to sell the lands as provided in the act of 1852, and appellant and its lessors hold title by *mesne* conveyances from the purchasers at those sales.

It has been held that the determination by the Federal government, by the Secretary of the Interior as head of the land department, that certain lands are swamp or overflowed lands is the determination of a question of fact by a tribunal specially authorized and empowered to determine such fact, and that such determination is conclusive except in a direct attack for fraud or mistake. (*State* v. *New, supra; Bristol* v. *Carroll County,* 95 Ill. 84; *French* v. *Fryan,* 93 U. S. 169; *Burfenning* v. *C., St. P., M. & O. Railway Co.* 63 id. 321.) In *Bristol* v. *Carroll County, supra,* on page 88, this court said: "It was not necessary, as suggested by appellants, to show that the lands were in fact swamp and overflowed lands. It was enough that they were found included in the list of swamp and overflowed lands which the commissioner of the general land office transmitted to the Governor as such. The act of Congress conferred upon the Secretary of the Interior the power of determining what lands were of the description granted by that act, and the decision of his office on that subject is controlling.—*French* v. *Fryan,* 93 U. S. 169." In *Ehrhardt* v. *Hogaboom,* 115 U. S. 67, parol evidence was held inadmissible to show that certain land patented under the Swamp Lands act was not, in fact, swamp land. In *Martin* v. *Marks,* 97 U. S. 345, it was held that it would probably have been necessary to support a title under the Swamp Lands act to prove the list was filed with the commissioner. The last two cases were cited with approval in *Fuller* v. *Shedd,* 161

Ill. 462, and it was there held that the classification of the
Federal government was final and conclusive except up-
on direct attack for fraud or mistake, citing *Johnson* v.
*Townsley,* 13 Wall. 72; *Warren* v. *VanBrant,* 19 id. 746;
*Shepley* v. *Cowan,* 91 U. S. 230; *Marquez* v. *Frisbie,* 101
id. 473; *Quinby* v. *Conlon,* 104 id. 420; *Steele* v. *Smelting*
*Co.* 106 id. 447; *Cragen* v. *Powell,* 128 id. 691; *Heath* v.
*Wallace,* 138 id. 573; *Barden* v. *Northern Pacific Railway*
*Co.* 154 id. 288. There are, however, some exceptions to
this rule. A patent may be attacked collaterally where it is
issued without authority of the United States; where Con-
gress has made no provision for the sale of the lands or
has reserved them; where the title has been previously
conveyed; where the United States had no title to the
premises patented; where the lands had never been public
lands, and where the conveyance was prohibited by statute.
*Patterson* v. *Winn,* 11 Wheat. 380; *St. Louis Smelting*
*Co.* v. *Kemp,* 104 U. S. 636; *Steele* v. *Smelting Co. supra.*

It is claimed by appellees that the facts in evidence come
within the exceptions above stated, for the reason that at
the time Illinois was admitted to the Union Lake Dupue
was navigable, the title to the bed of the lake vested in
the State, and therefore the United States was without
authority to issue a patent under the act of 1850 to lands
which already belonged to the State. In all of the cases
which announce an exception to the rule it appears from
the facts that the cases came clearly within some one of
the exceptions. Where it becomes the duty of the Secretary
of the Interior to determine whether lands are swamp lands
or otherwise, such determination, based upon a finding of
fact, cannot be attacked except in a direct proceeding on the
ground of fraud or mistake. It is very apparent from the
evidence in this case that the question as to whether or not
Lake Dupue was navigable was a question of fact, depend-
ing upon conflicting evidence. The Secretary of the Interior
decided that the lake was not navigable, and his decision

comes clearly within the rule that it cannot be attacked except directly for fraud or mistake. His classification of this land was sent to the Governor of Illinois, who accepted it, requested a patent, and the patent was issued. The validity of this classification was recognized not only by the Governor, but it was recognized by the legislature by the passage of the act of 1852 giving the land to Bureau county and authorizing the county to sell it. No attack was made on the classification by the State, and it was not within the power of appellees after all these years, in a collateral proceeding, to say that the patent was null and void and that the lake was navigable at the time the State was admitted to the Union. *St. Louis Smelting Co.* v. *Kemp, supra; United States* v. *Throckmorton,* 96 U. S. 61.

The decree will be reversed and the cause remanded, with directions to enter a decree as prayed in the bill.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*