**FIDLER et al. v. ROBERTS.**

No. 4284.

Circuit Court of Appeals, Seventh Circuit.
May 28, 1930.

Rehearing Denied July 3, 1930.

B. M. Chiperfield, of Canton, Ill., for appellants.

George W. Hunt, of Peoria, Ill., for appellee.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from an interlocutory order or decree on a bill filed by appellee, Helen O. Roberts, against appellants, Jacob Fidler, Cliff Oldham, and Frank Worms. Appellants filed an affirmative answer, and upon a preliminary hearing they were enjoined, until further order of the court, from going into and upon the premises described in the bill.

In brief, the bill avers that appellee is a citizen and resident of, and resides in, Los Angeles, in the state of California, and that the appellants are citizens and residents and reside in Fulton county, Ill.; that the amount involved in this proceeding, exclusive of interest and costs, is in excess of $3,000; that appellee is the owner in fee of the land described in the bill of complaint, which amounts to over 2,000 acres, all of which is located in Fulton county, Ill.; that the greater portion of this land is swamp and overflowed land and in a state of nature, and it is estimated by counsel that the overflowed land exceeds 1400 acres; that prior to the opening of the hunting season appellee had caused notices to be posted in conspicuous places over said territory to the effect that no trespassing would be allowed, and had caused similar notices to be published in the local papers; that, notwithstanding these notices, persons whose names and identity were unknown frequently came upon the lands in the nighttime as well as in the daytime, without authority, and shot, hunted, fished, and trapped, and trampled down crops, destroyed fences, and permanently injured said property; that, when the hunting season opened on September 24, 1929, the appellants and others, approximating one hundred in number, came upon said premises contrary to said notices and contrary to the wishes of appellee, and unlawfully trespassed upon said premises for the purpose of hunting; that appellee's agent was unable to ascertain the names of more than the three appellants; that appellants have threatened to return in the future and use the premises in the same manner as above set forth, and appellee believes that the trespassing will continue; and that the private ownership of said property will be practically destroyed. She therefore prays that the appellants, and all others with notice, may be permanently enjoined from unlawfully using this property in the manner above indicated, and she asks for a preliminary injunction enjoining appellants from so using the same until a final hearing.

This being a temporary injunction, the only questions for our determination are: (1) Had the trial court jurisdiction to entertain the application for an injunction? And, jurisdiction appearing, (2) was the injunctional relief improvidently granted? Harding v. Corn Products Refining Co., 168 F. 658 (7 C. C. A.); Gasaway et al. v. Borderland Coal Corporation, 278 F. 56 (7 C. C. A.).

We are first met with the objection on the part of appellants which questions the jurisdiction of the lower court, in that the bill does not allege, nor does the evidence show, that the amount in controversy, exclusive of interest and costs, exceeds $3,000; and they further insist that this fact should be alleged and proved as to each appellant.

It is sufficient, to support the jurisdiction of a federal court, that the facts requisite to confer it appear in any part of the record, or are the necessary consequences of the facts stated in the pleadings or the findings of the court. Myers v. Hettinger (C. C. A.) 94 F. 370. The verified bill alleges generally that appellee is the owner of the fee simple of many hundreds of acres of valuable land, most of which consists of low or marsh lands, sloughs, and ponds and shallow lakes, and that these lands are very valuable for hunting, fishing, and trapping purposes. The matter in controversy is whether or not the public at large, which of course includes appellants, has the right to go upon and use said land at will, for the purpose of hunting, fishing, and trapping. This use, with the attendant damages to appellee's property, exceeds in value the sum of $3,000, according to the averments of the verified bill. None of the appellants has any greater or lesser right to such use of the land than do all other members of the general public. Therefore, under the issues, the entire controversy, including the value of the use, is raised by the trial of each appellant. If any appellant recovers on the theory of public use, he must do so on the theory that the public has the same right as he; and the damage to appellee by the existence of such use is the same whether the question is tried in a case where one member of the public is a defendant, or where all the members of the public are defendants. Therefore the damage to appellee, or the amount involved, is the same in each

case. We think the allegation of the bill in this particular is sufficient.

Appellants further urge that the bill is not sufficient to give jurisdiction by reason of the fact that the words "amount involved" are used instead of the statutory words "amount in controversy." It seems clear to us that this is a distinction without any material difference, and we think the bill sufficient in this particular.

Appellants insist that the bill is insufficient on account of verification. The bill alleges that appellee is a resident of, and is now living in, California. It is verified by two persons, one of whom is appellee's supervising agent of the land, and the other is her tenant. Most of the alleged facts are stated to be within the personal knowledge of both affiants, and those facts which are sworn to on information and belief are specifically designated.

When the decree was first presented to the trial judge for signature, appellants for the first time objected to it on the ground that the bill was not properly verified, as required by equity rule 25 (28 USCA § 723). It is sufficient to say in this respect that, if appellants desired to avail themselves of the alleged deficiency in verification, ample opportunity is provided under equity rule 29 (28 USCA § 723); but such action must be timely. Lack of equity jurisdiction, if not objected to by a defendant, may be ignored by the court in a case where the subject-matter of the suit is of a class of which a court of equity has jurisdiction; and, where the defendant has failed to object seasonably, the objection will be treated as waived. Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763.

Appellants further attack the bill on the grounds that the insolvency of the appellants, the irreparable injury to appellee, and the imminency of a multiplicity of suits, are not averred with sufficient particularity. These objections were first made by appellants when the decree was presented to the court, which was several days after the decree for a temporary injunction was ordered by the court. There was no error in overruling the objections at that late day.

It is further contended by appellants that Rice Lake, which constitutes a major portion of the premises from which appellants are enjoined, is now a navigable body of water, and has been such continuously from the earliest days of this country; that by the Enabling Act passed by Congress on April 18, 1818 (3 Stat. 428), Illinois was admitted to the Union upon the same footing in all respects with the original states; that, among other things, it thereby became the owner of all navigable lakes, which it has from that time continuously held and now holds in trust for all the people of Illinois, including appellants; that the state of Illinois, or any lesser political subdivision thereof, had no right to dispose of all or any part of any navigable lake to any private person; and that by reason of which facts the people of Illinois, including appellants, have the right to freely resort to and use said navigable lake for the purposes of navigation, boating, fishing, hunting, and the like.

By an act of Congress in 1850 (USCA title 43, § 982), swamp and overflowed lands within the limits of Illinois were conveyed by the United States to the state of Illinois. The act nowhere identifies the land conveyed, but for the purpose of identification of the land intended to be conveyed the Department of the Interior was authorized to investigate and determine what lands were swamp and overflowed lands, as distinguished from lands covered by navigable waters. USCA title 43, § 983; Dupue Rod & Gun Club v. Marliere, 332 Ill. 322, 163 N. E. 683. The Department of the Interior thereupon determined what was swamp and overflowed land in Illinois, and listed the same as such, and a patent was granted by the United States to the state of Illinois for the same. Later the state of Illinois, by an act of its Legislature, conveyed to Fulton county, Ill., all that part of the swamp and overflowed land thus received from the United States which was within the limits of Fulton county. Laws of Illinois 1852, p. 178.

Much has been said, in both appellee's argument and brief, to the effect that the land in question is a part of the swamp and overflowed land patented by the government to the state of Illinois, and granted by the latter to Fulton county; that it was sold and conveyed by Fulton county, pursuant to statute, to appellee's remote grantor. There is no evidence in the record, however, upon which these conclusions can be based. It is true that the maps and plats in evidence show that Rice Lake is located near the Illinois river in Fulton county, and the verified complaint avers that the land in question is swamp and overflowed land; but as to whether it is a part of that land patented by the government the record is silent. If, in fact, the land in question is a part of the swampy and overflowed land patented to Illinois, then the Enabling Act of 1818 would

serve no useful purpose to appellants, regardless of the fact that the waters in question were or are actually navigable. The Dupue Rod & Gun Club v. Marliere, 332 Ill. 322, 163 N. E. 683. Thus the Enabling Act of 1818, as referred to in the answer, might or might not be conclusive as against appellee's title. Taking judicial knowledge of the facts that the Department of the Interior had, as against appellants, conclusively determined what are swamp and overflowed lands in Fulton county, and that these lands were transferred to the state of Illinois and by it to Fulton county, by conveyances which the law says can only be attacked directly and for fraud or mistake, and not in any event by appellants, and further considering the verified bill and the evidence presented to the effect that appellee is the owner of the fee-simple title of the lands in question, which are swamp and overflowed lands—and in their natural state—we think the lower court was warranted in issuing a temporary injunction in order to preserve the status quo of the property until the question could be finally heard.

Moreover, if the land had never been patented, the Enabling Act of 1818 would avail appellants nothing, unless the waters were or are navigable. Upon this question the evidence is at variance. The court weighed this evidence, and found adversely to appellants, and we cannot disturb this finding.

That a threatened trespass to real property may be enjoined, there can be no question. Pomeroy's Equity Jurisprudence (2), vol. 3, § 1347. The evidence in this case shows that the appellants were trespassers upon the lands in controversy—assuming that the title thereof is in appellee. While the threatened future trespassing was seriously controverted, and each appellant disclaimed any intention of going upon the land in the future, yet in so far as Fidler and Oldham are concerned there was evidence to the effect that they did intend to return, and this was sufficient to warrant the injunction against them. There was no evidence whatever that Worms threatened or intended to return, and, of course, an act already committed cannot be enjoined.

The mere fact that Worms by his answer disputes appellee's title cannot be considered as a threat to repeat the trespass. He had a perfect right, in defense of his completed act, to prove that he was not in the wrong, and thus escape the costs of this action, and this he could successfully do by alleging and proving lack of title in appellee.

That the injunction was made to include all trespassers, known and unknown, constitutes no error so far as these appellants are concerned. The right to include unknown and unserved parties is not presented by this appeal, and we do not decide it.

The decree is reversed as to appellant Worms, with instructions to dissolve the injunction as to him. As to the appellants Fidler and Oldham, the decree is affirmed.